OPINION OF THE COURT
Jones, J.
Inasmuch as there is no substantial evidence in the record to support the State Tax Commission’s finding that Endeavor Car Company, a limited partnership engaged in the financing and leasing of railroad tank cars, was not carrying on a business in New York State, the commission’s determination, dependent on that finding, that the distributive share of partnership losses was not deductible on the taxpayers’ nonresident return should be annulled.
George R. Vogt[1] and Marion G., his wife, resided in the State of New Jersey and filed a joint New York State nonresident income tax return for the year 1970, in which they took a deduction for losses sustained by George R. Vogt as a limited partner in Endeavor Car Company. Following audit of the return, the Department of Taxation and Finance issued a notice of deficiency disallowing these losses. The taxpayers filed a petition for review. After a hearing the State Tax Commission made a determination sustaining the notice of deficiency and denying the taxpayers’ petition. Thereupon the present proceeding under CPLR article 78 was instituted to review the commission’s determination. On transfer from Supreme Court, Albany County, the Appellate Division, one Justice dissenting, confirmed the determination of the State Tax Commission. We now reverse, grant the petition and annul the determination of the State Tax Commission.
The issue is whether George R. Vogt’s distributive share of the partnership loss for the year 1970 was an allowable deduction, and that question turns on whether there was substantial evidence to sustain the commission’s determination that “the activities of the partnership, Endeavor Car Company, were passive in nature and did not have the frequency, continuity, and regularity of activities so as to constitute a regular business activity” carried on in the State of New York.
*584 Endeavor Car Company (Endeavor) was a limited partnership established in 1968 under the Partnership Law of the State of New York. It consisted of two general partners and 18 limited partners of which George R Vogt was one. PPG Industries (formerly Pittsburgh Plate Glass) was a corporation engaged in the production of glass, basic chemicals, coatings and resins. It used a large number of railroad tank cars to transport both raw materials to its plants and finished products to its customers. Endeavor was formed to purchase used tank cars from PPG and new tank cars from their manufacturer and then to lease these cars to PPG. This method of operating was cheaper for PPG than its ownership of the rolling stock and achieved certain other corporate objectives. At the end of 1970 Endeavor owned 614 tank cars (546 used cars and 68 new cars), all of which were leased to PPG.
The business of Endeavor was to purchase, finance and lease these tank cars. To finance the acquisition of the rolling stock, Endeavor raised a total of $10,679,500 in capital, $1,429,500 from general and limited partners and $9,250,-000 in long-term debt. The latter was negotiated from lending institutions in two stages. Initially temporary financing was obtained; the partnership paid interest on the temporary borrowings, increasing the amount thereof as additional tank cars were acquired, and paid commitment fees on the balance of the loan. In the latter part of 1970 when all aspects of Endeavor’s transaction with PPG were in place, Endeavor secured commitments for long-term financing from four institutional lenders, based on current appraisals of the rolling stock. The closing of the long-term financing took place in January, 1971, at which time a corporate trustee was appointed to act on behalf of the institutional lenders.
As Endeavor purchased tank cars it leased them to PPG Under a temporary lease negotiated with PPG with supplements prepared from time to time to cover additional cars (ordered by PPG) as they arrived from the manufacturers. The temporary lease covered the transitional period from late 1968 through 1970 and was replaced with a permanent lease in January, 1971.
*585 The partnership activities were directed and supervised by Charles A. Lee, Jr., one of Endeavor’s two general partners,[2] from the offices of First Boston Corporation (of which Mr. Lee was a vice-president) at 20 Exchange Place, New York, New York. The Tax Commission found: that Mr. Lee devoted approximately 30 % of his time to partnership business; that the partnership books of account, ledgers, files and other records were kept at this office; that mail addressed to the partnership was delivered either to this office or to the partnership’s statutory address at 10 Garden Place, Brooklyn, New York (Mr. Lee’s residence); that Mr. Lee’s activities consisted of arranging for temporary and long-term financing, negotiating lease arrangements, issuing capital calls on partners, conducting correspondence, providing facilities and personnel on a contractual basis, and supervising the general activities of the partnership ; that while the partnership had no employees, as such, it utilized the services of employees of First Boston Corporation and also relied on that company for other services, which services and personnel were provided on a contractual basis under a compensatory arrangement between the partnership and First Boston Corporation; and that the partnership had no other offices either inside or outside New York State. In sum the facts found by the Tax Commission on the basis of the evidence in the record demonstrate that all the business activities of this somewhat unusual enterprise were conducted within the State of New York, at or through its office at 20 Exchange Place.
Section 637 (subd [a], par [1]) of the Tax Law provides: “In determining New York adjusted gross income of a nonresident partner of any partnership, there shall be included only the portion derived from or connected with New York sources of such partner’s distributive share of items of partnership income, gain, loss and deduction entering into his federal adjusted gross income, as such portion shall be determined under regulations of the tax commission consistent with the applicable rules of section six hundred thirty-two.”
*586 Section 632 provides in pertinent part:
“(a) General. The New York adjusted gross income of a nonresident individual shall be the sum of the following:
“(1) The net amount of items of income, gain, loss and deduction entering into his federal adjusted gross income, as defined in the laws of the United States for the taxable year, derived from or connected with New York sources, including:
“(A) his distributive share of partnership income, gain, loss and deduction, determined under section six hundred thirty-seven,
* * *
“(b) Income and deductions from New York sources.
“(1) Items of income, gain, loss and deduction derived from or connected with New York sources shall be those items attributable to:
* * *
“(B) a business, trade, profession or occupation carried on in this state.”
These statutory provisions are supplemented by the provisions of regulations (§ 131.4[a]; 20 NYCRR 131.4[a]):
“131.4 Business, trade, profession or occupation carried on in this State (Tax Law, § 632[b] [1] [B]). The New York adjusted gross income of a nonresident individual includes items of income, gain, loss and deduction entering into his Federal adjusted gross income which are attributable to a business, trade, profession or occupation carried on in this State.
“(a) A business, trade, profession or occupation (as distinguished from personal services as an employee) is carried on within the State by a nonresident when he occupies, has, maintains or operates desk room, an office, a shop, a store, a warehouse, a factory, an agency or other place where his affairs are systematically and regularly carried on, notwithstanding the occasional consummation of isolated transactions without the State. This definition is not exclusive. Business is carried on within the State if activities within the State in connection with the business are *587 conducted in this State with a fair measure of permanency and continuity. A taxpayer may enter into transactions for profit within the State and yet not be engaged in a trade or business within the State. If a taxpayer pursues an undertaking continuously as one relying on the profit therefrom for his income or part thereof, he is carrying on a business or occupation.”[3]
The critical question, therefore, is whether the partnership was carrying on a business in New York State within the contemplation of the cited sections of the Tax Law in 1970. If so George R. Vogt’s distributive share of the partnership losses for that year would be derived from or connected with New York State sources and, as such, would be includable in the calculation of his adjusted gross income for that year.
Considering only the factual findings made by the Tax Commission itself with respect to the business activities of this partnership we conclude there is no evidence to support the determination that the business of the partnership was passive only and was not “systematically and regularly carried on * * * with a fair measure of permanency and continuity” in New York State.[4] The partnership was established and operated to arrange financing and to acquire and lease railroad tank cars for use by the lessee out of State. Its business was conducted by Mr. Lee as general partner at 20 Exchange Place in New York City. In addition to his own substantial personal services, he utilized personnel and services of First Boston Corporation which were provided the partnership on a contractual basis under a compensatory arrangement. In the light of the nature of this enterprise, the activities in New York constituted *588 an active business (cf. Cooper Tire & Rubber Co. Employees’ Retirement Fund v Commissioner of Internal Revenue, 36 TC 96, affd 306 F2d 20).
In our court the Tax Commission relies heavily to support its determination on a statement which appears on the partnership’s New York State tax returns for each of the years 1969, 1970 and 1971:
“STATEMENT REGARDING ALLOCATION OF NET OPERATING LOSS TO NONRESIDENT PARTNERS
“The property owned by this partnership is located and operated outside the State of New York. No part of the net operating loss of the partnership is derived from or connected with New York State sources, and therefore not allocable to New York State by nonresident partners.”
The evidence at the hearing before the commission revealed that this statement had been placed on the returns by the partnership’s accountants, and the returns with such statement had been signed by Staghound Corporation as a general partner.
The first sentence of the statement is descriptively accurate; the railroad tank cars owned by .the partnership were located outside the State of New York and they were operated outside the State, but by PPG as lessee and not by the partnership. It is the second sentence on which the State Tax Commission seizes and which its counsel in our court characterizes as “an unequivical admission by Endeavor that the losses appellants seek to deduct in the instant proceeding were not ‘derived from or connected with New York sources’ within the meaning and intent of Tax Law, § 632(a) (1), (b) (1) (B) or Tax Law, § 637(a) (1).” The nature of this statement must be considered to determine the legal significance properly to be accorded to it. This sentence is not an affirmation or admission of fact; it is rather a statement of a conclusion of law, a legal characterization of tax consequence, tracking the language of the statute. The Tax Commission, in effect, would have us deem it an “admission of non-deductibility”. We do not question that an admission as to tax consequences (even though it *589 is an admission with respect to a conclusion of law) if made by a taxpayer or on his behalf might be binding on him and might therefore properly be made the predicate for imposition of tax liability. Thus, the critical issue on this branch of the present case is whether the Tax Commission’s determination of deficiency against Mr. and Mrs. Vogt could properly be premised on this “admission of nondeductibility”. There is no proof in this record that Stag-hound Corporation, the general partner that signed the partnership tax returns, was authorized by Mr. Vogt to make this admission on his behalf or that the statement was otherwise ratified or adopted by Mr. Vogt. Although the law is clear that admissions or representations made by a partner concerning partnership affairs within the scope of his authority may be used against the partnership (e.g., Partnership Law, § 22), here the situation is the converse. The Tax Commission would use this statement by the partnership not against or with respect to the affairs of the partnership, but as an admission to fix the liability of an individual limited partner in the conduct of his personal affairs. No authority is cited for any such use,[5] nor does it comport with analysis of legal principle.[6] The conclusory declaration on the partnership returns as to characterization for tax purposes of the net operating loss of the partnership, for whatever purpose or possible advantage there *590 sought, was in no way binding on Mr. Vogt in the computation of his individual personal income taxes.
Absent the impermissible reliance on the statement affixed to the partnership returns, we conclude that there was no evidence, let alone any substantial evidence, to support the Tax Commission’s finding that the activities of the partnership did not constitute the carrying on of a regular business in the State of New York. Accordingly, the determination of the Tax Commission that Mr. Vogt’s distributive share of the partnership loss for the year 1970 was not an allowable deduction, dependent as it was on the underlying factual finding, cannot stand.[7]
For the reasons stated, the judgment of the Appellate Division should be reversed, with costs, the petition granted, and the determination of the State Tax Commission annulled.
Judges Gabrielli, Fuchsberg and Meyer concur with Judge Jones; Chief Judge Cooke and Judges Jasen and Wachtler dissent and vote to affirm for reasons stated in the memorandum at the Appellate Division (79 AD2d 758).
Judgment reversed, etc.

. George R. Vogt died April 30, 1977.

. The other general partner was Staghound Corporation, a New York corporation.

. In its decision of September 21, 1979 the Tax Commission purported to rely on section 703 of the Tax Law and regulations promulgated with reference thereto. Literally read these provisions related to the tax on unincorporated businesses and not to the tax on personal income, although the underlying concepts are not dissimilar.

. The contention, relied on for the first time in this article 78 proceeding, that no deduction should be allowed on the ground that Endeavor’s transactions were not entered into for profit and constituted nothing but an impermissible tax shelter, not having been the premise for the Tax Commission’s ruling, cannot now be urged to sustain that ruling (Matter of Montauk Improvement v Proccacino, 41 NY2d 913; Matter of Barry v O’Connell, 303 NY 46, 50-51).

. The only case cited on behalf of the Tax Commission in our court is Matter of Schrader v State Tax Comm. (72 AD2d 873), a case involving an assessment of an unincorporated business tax in consequence of the conduct of a farming business and presenting no issue as to the legal significance to be accorded a statement made by a partnership for tax or other purposes. The majority at the Appellate Division cited only Hutchison v Brown (277 App Div 130), a case involving the admissibility of statements made by the plaintiffs to the defendant that a third person was the plaintiff’s partner in the transactions and of statements made by such third person with respect to the transactions in issue. Neither case constitutes authority for the proposition sought to be advanced by the State Tax Commission in this case.

. Testimony as to facts with respect to the conduct of the activities of the partnership (as contrasted with an admission with respect to a legal issue) made by another partner on the basis of his personal knowledge of partnership affairs would, of course, be admissible against an individual partner, as would comparable testimony of any third-party witness, but not on any theory that such testimony was an admission binding on the individual partner. Indeed so it was in this case with reference to the testimony of Mr. Lee as to his activities on behalf of the partnership.

. The contention, originally advanced by the State Tax Commission, that in any event Mr. Vogt would not have been entitled to claim a loss under the United States Treasury Regulation (§ 1.704-1 [d]) has been abandoned in our court. *619 one factor to be considered in determining whether an action should be dismissed pursuant to CPLR 327.