OPINION OF THE COURT
Jasen, J.
The issue presented upon this appeal is whether losses of limited partnerships claimed upon petitioners’ personal income tax returns were properly disallowed by the Tax Commission on the basis that said partnerships were not carrying on a business with a fair measure of permanency and continuity in New York State and New York City and that, therefore, the partnership losses were not derived from or connected with New York sources.
During the years in question — 1971, 1972 and 1977 — petitioners Stanley N. Ausbrooks and Virginia Ausbrooks were nonresidents of New York State who filed joint New York State nonresident personal income tax returns for 1971 and *283 1972, and nonresident New York State and New York City-personal income tax returns for 1977.[1] During said years, petitioner was a partner in the accounting firm of Peat, Marwick, Mitchell & Co. (PMM). On the New York State returns, petitioner reported as New York source income his distributive share of partnership income derived from PMM, to the extent that his distributive share of partnership income was allocated to New York State sources on PMM’s partnership returns. Also included in the computation of total New York income for the years at issue, and directly implicated upon this appeal, was petitioner’s distributive share of income or losses derived from a series of limited partnerships known as Copem 71, Copem 72, Copem Marts and Copem 73 (hereinafter collectively referred to as Copem partnerships).[2] The Copem partnerships were devised to permit petitioner and other active partners in PMM to participate in investment opportunities without risking a breach of PMM’s strict conflict of interests policy, which virtually precluded investment in publicly held corporations.
As determined by the Tax Commission, the Copem partnerships were all limited partnerships formed in accordance with and pursuant to the provisions of the New York Partnership Law. Each of the Copem partnerships had three general partners. Copem 71 had a total of 155 limited partners; Copem 72 had a total of 173 limited partners; Copem Marts had a total of 240 limited partners; and Copem 73 had a total of 173 limited partners. Participation in the Copem partnerships, either as a general or limited partner, was restricted to active partners of PMM. The Copem partnerships were funded through capital contributions made by its general and limited partners. As each partnership was formed, all active partners of PMM were invited to participate and, if they elected to participate, to subscribe in units varying from $1,250 to $2,000. Copem 71, Copem 72, Copem Marts and Copem 73 started with capital contributions of $1,272,300, $2,120,000, $2,926,250 and $1,908,000, respectively.
The Copem partnerships functioned by becoming limited partners in other partnerships (second-tier partnerships). These second-tier partnerships were all non-New York part *284 nerships generally engaged in the business of acquiring, owning, holding, leasing, improving, developing, operating and managing real property, including the construction of commercial, industrial and residential buildings. All of the real property owned, held or leased by the second-tier partnerships was located outside of the State of New York. The Copem partnerships generally held a 50% interest in the profits and losses of the second-tier partnerships in which they invested.[3] The Copem partnerships did not own any real property.
James W. Cumpton, a general partner in all four Copem partnerships, was the de facto chief executive officer of the Copem partnerships. The other two general partners served as an investment committee. Once partnership capital was invested in the second-tier partnerships, Cumpton would monitor the financing arrangements and operations of the second-tier partnerships. When the general partners of the Copem partnerships attended to Copem partnership matters during normal business hours, PMM would bill the Copem partnerships for said time, at the standard rate per hour. The Copem partnerships operated primarily out of Cumpton’s PMM office, located in Manhattan, and paid fees to PMM for its use of office space, filing cabinets and support staff. There was no written contract between the Copem partnerships and PMM with respect to the use of office space and equipment or the rate of reimbursement to be paid by the Copem partnerships.
*285 Petitioner received notices of deficiency for the years 1971, 1972 and 1977, challenging petitioner’s deduction of his distributive share of Copem partnership losses for said years, upon the ground that the Copem partnerships were not carrying on business in New York State and New York City. The notices of deficiency were adjusted and sustained by the State Tax Commission which determined that the Copem partnerships were not carrying on business in New York State and New York City within the meaning and intent of Tax Law § 637 (a) (1) and § 632 (b) (1) (B) and Administrative Code of the City of New York, title U, chapter 46, § U46-1.0 (f), but, rather, served as personal investment vehicles for the partners of PMM.
Petitioner commenced this proceeding pursuant to CPLR article 78 to review the determination of the State Tax Commission which sustained personal income tax assessments for the years 1971, 1972 and 1977. Without disturbing the factual findings of the Commission, the Appellate Division annulled the legal determination of the Commission, concluding that it was "not supported by substantial evidence”. For the reasons that follow, the judgment of the Appellate Division should be reversed and the determination of the State Tax Commission reinstated.
Tax Law § 637 (a) (1) provides that "[i]n determining New York adjusted gross income of a nonresident partner of any partnership, there shall be included only the portion derived from or connected with New York sources of such partner’s distributive share of items of partnership income, gain, loss and deduction entering into his federal adjusted gross income, as such portion shall be determined under regulations of the tax commission consistent with applicable rules of section six hundred thirty-two”. Section 632 (b) (1) (B), insofar as is relevant to this appeal, defines income and deductions from New York sources as "[i]tems of income, gain, loss and deduction derived from or connected with New York sources shall be those items attributable to * * * a business, trade, profession or occupation carried on in this state”.
Whether income and deductions are derived from or connected with New York sources is determined by reference to Commission regulations. (Tax Law § 637 [a] [1].) 20 NYCRR 134.1 (a) provides that a nonresident partner shall include in New York income his distributive share of partnership income, gain, loss and deduction to the extent such items are *286 derived from or connected with a business carried on in New York State, as determined pursuant to 20 NYCRR 131.4 (a). It is provided by 20 NYCRR 131.4 (a) (2) that: "A business, trade, profession or occupation (as distinguished from personal services as an employee) is carried on within New York State by a nonresident when he occupies, has, maintains or operates desk space, an office, a shop, a store, a warehouse, a factory, an agency or other place where his affairs are systematically and regularly carried on, notwithstanding the occasional consummation of isolated transactions without New York State. This definition is not exclusive. Business is carried on within New York State if activities within New York State in connection with the business are conducted in New York State with a fair measure of permanency and continuity. A taxpayer may enter into transactions for profit within New York State and yet not be engaged in a trade or business within New York State. If a taxpayer pursues an undertaking continuously as one relying on the profit therefrom for his income or part thereof, he is carrying on a business or occupation”.
Also implicated, with respect to petitioner’s New York City income tax returns, are the New York City Administrative Code and provisions of the Internal Revenue Code. Administrative Code, title U, chapter 46, § U46-1.0 (f) defines net earnings from self-employment as: "the same as net earnings from self-employment as defined in subsection (a) of section fourteen hundred two of the internal revenue code * * * However, 'trade or business’ as used in subsection (a) of section fourteen hundred two of such code shall mean the same as trade or business as defined in subsection (c) of section fourteen hundred two of such code”. Internal Revenue Code § 1402 (a) (26 USC), as permitted herein, defines net earnings from self-employment as an individual’s: "distributive share * * * of income or loss described in section 702 (a) (8) from any trade or business carried on by a partnership of which he is a member”. Internal Revenue Code § 1402 (c) provides that: "The term 'trade or business’, when used with reference to self-employment income or net earnings from self-employment, shall have the same meaning as when used in section 162 (relating to trade or business expenses)”.
In determining whether an enterprise is carrying on business in New York State and New York City, within the meaning and intent of Tax Law § 637 (a) (1) and § 632 (b) (1) (B) and Administrative Code § U46-1.0 (f), certain objective factors must be weighed, including: (1) whether the business is *287 "systematically and regularly carried on” in New York (20 NYCRR 131.4 [a] [2]); (2) whether activities within the State in connection with the business are conducted in this State with a "fair measure of permanency and continuity” (20 NYCRR 131.4 [a] [2]); and (3) whether the management of partnership assets, located outside of the State of New York, is passive or active (Matter of Vogt v Tully, 53 NY2d 580). In sum, an enterprise is carrying on business in New York, for tax purposes, where there exists a reasonably systematic and continuous transactional nexus between this State and the enterprise. In this case, the Tax Commission correctly held that the Copem partnerships did not carry on business in New York.
The concept of carrying on a business, as utilized in tax statutes, connotes something more than investment and receipt of income. (People ex rel. Nauss v Graves, 283 NY 383, 386.) The Copem partnerships functioned by becoming limited partners in so-called second-tier partnerships. The second-tier partnerships were located outside of New York, and the real estate ventures engaged in by the second-tier partnerships were similarly located out-of-state. The Copem partnerships had no right to manage the property or aifairs of the second-tier limited partnerships. The Copem partnerships owned no real property. The commercial activity of the Copem partnerships, which, by necessity, was directly correlated to the situs of business conducted by the second-tier partnerships, was located outside of the State of New York. The general oversight exercised by the Copem partnerships of non-New York investments was not a "permanent and continuous” link between the business and this State (20 NYCRR 131.4 [a] [2]), but an incidental and ancillary function to the out-of-state commercial activity of the second-tier partnerships. Under these circumstances, it cannot be said that the out-of-state real estate ventures bore a "systematic or regular” connection to this State (20 NYCRR 131.4 [a] [2]). Inasmuch as operational control of the out-of-state real estate ventures rested exclusively with the second-tier partnerships, the Copem partnerships’ involvement in said ventures constituted a role of passive investment — not active management. Thus, the Copem partnership losses were not derived from or connected with New York sources, and deductions based thereon were properly disallowed by the Tax Commission.
Finally, the case of Matter of Vogt v Tully (79 AD2d 758, revd 53 NY2d 580, supra), relied upon by the Appellate *288 Division is distinguishable from the case before us. In Matter of Vogt, the Endeavor Car Company (Endeavor), a New York limited partnership, purchased, financed and leased railroad tank cars. PPG Industries (PPG), an out-of-state corporation engaged in the production of glass, basic chemicals, coatings, and resins, used a large number of railroad tank cars to transport its products. Endeavor was formed to purchase used tank cars from PPG and new tank cars from their manufacturer, and thereafter lease the tank cars to PPG. Under the terms of its lease with Endeavor, PPG assumed liability and agreed to indemnify Endeavor against all obligations and claims relating to or arising out of the operation of the equipment, and also assumed maintenance and repair costs. Endeavor and PPG reflected an integrated operation. Endeav- or’s single commercial purpose, and contractual relationship with PPG, created a systematic and continuous connection with New York. Moreover, Endeavor maintained a direct proprietary interest in partnership assets — the railroad tank cars. It was due to this systematic transactional nexus between Endeavor and PPG that George R. Vogt, a limited partner in Endeavor, was permitted to deduct his distributive share of losses incurred by Endeavor. In contrast, the relationship between the Copem partnerships and the second-tier partnerships constituted a series of isolated investments, whereby the Copem partnerships derived no direct ownership interest in second-tier partnership assets. The transactional continuity and degree of integration which existed between PPG and Endeavor in Matter of Vogt is simply not present in this case.
Accordingly, the judgment of the Appellate Division should be reversed, with costs, and the determination of the State Tax Commission reinstated.
Chief Judge Wachtler and Judges Meyer, Kaye, Alexander and Titone concur; Judge Simons taking no part.
Judgment reversed, etc.

. Petitioner Virginia Ausbrooks is involved in this proceeding solely by reason of filing joint income tax returns with Stanley N. Ausbrooks. Accordingly, the term "petitioner” hereinafter refers only to Stanley N. Ausbrooks.

. Petitioner’s 1977 Nonresident Earnings Tax Return for New York City reported net earnings from self-employment.

. Copem Partnership Second-Tier Partnership
Copem 71 (1) Crow-71, Ltd.
(2) Baker-Jones-Crow-71, Ltd.
(3) El Dorado Vineyard, Co.
Copem 72 (1) Calabassas Crest, Ltd.
(2) Horizon Village Apartments
(3) El Dorado Vineyard, Co.
(4) Copem 72 — Mesa Petroleum, Co.
(5) Cal Park Bldg., Ltd.
(6) Copem Marts
(7) Kyp Properties, Ltd.
(8) McKinley Arms Apt., Co.
(9) Santa Barbara Townhouse, Ltd.
(10) 1617 Westcliff Dr., Ltd.
(11) Ventura/Ojai, Ltd.
Copem Marts (1) Rope Associates, Ltd.
Copem 73 (1) Rospec Associates
(2) Park Plaza II, Ltd.
(3) Santa Clara Office Bldg.