In the Matter of MICHAEL EPSTEIN et al., Doing Business as MY FATHER'S PLACE, Petitioners, v NEW YORK STATE TAX COMMISSION, Respondent.

Third Department, December 3, 1987

### APPEARANCES OF COUNSEL

*Shaw, Goldman, Licitra, Levine & Weinberg, P. C. (Joseph Sferrazza* and *Edward A. Christensen* of counsel), for petitioners.

*Robert Abrams, Attorney-General (Francis V. Dow* and *Wayne L. Benjamin* of counsel), for respondent.

### OPINION OF THE COURT

YESAWICH, JR., J.

Petitioners, Bryan and Rose, Inc. and its president, Michael Epstein, operated an establishment called My Father's Place in Nassau County. My Father's Place presented live musical concerts, and occasionally comedians, dancers or one-act plays, in a converted bowling alley where patrons were seated at long tables or the bar, and food and beverage were available. Approximately one half of the establishment's gross income came from the sale of admission tickets (sold at a box office and through Ticketron outlets) and the remainder from the sale of food and beverage. My Father's Place was open only on nights of performances. On those nights there were typically two performances, and a patron wishing to attend both performances would have to buy two tickets as the facility was cleared after the first performance. Other than the admission ticket, there was no cover charge or minimum food purchase, nor did the ticket price include any food or beverage. There was no room in the facility for dancing.

Petitioners did not collect sales and use tax on the sales of admission tickets, nor did they keep records on food and beverage sales sufficient to enable these sales amounts to be verified. As the result of an audit, the Department of Taxation and Finance issued notices of determination and demand for payment of sales and use tax for periods running from mid-1977 through late-1981. The assessments were based on the Department's determination that the admission charges were

taxable under Tax Law § 1105 (f) (3), and that petitioners owed additional sales tax on food and drink based on "markup tests" conducted by the Department's auditors. Petitioners sought a redetermination of the assessments and refund of sales and use tax paid, but, following a hearing, respondent sustained the Department's determination. Petitioners then brought this CPLR article 78 proceeding which has been transferred to this court.

The dispute with respect to whether petitioners' admission charges are subject to sales and use tax turns on whether My Father's Place was, as respondent maintains, a cabaret (which is subject to sales and use tax on admission fees under Tax Law § 1105 [f] [3]) or a concert hall devoted to dramatic or musical arts performances (which is exempt from sales and use tax on admission fees under Tax Law § 1105 [f] [1]). By Tax Law § 1105 (f) (3), a sales and use tax is imposed upon the "charges of a roof garden, cabaret or other similar place in the state" (hereinafter cabaret tax). During the assessment periods under review, a roof garden, cabaret or other similar place was defined in Tax Law § 1101 (d) (former [12]) simply as "[a]ny roof garden, cabaret or other similar place which furnishes a public performance for profit". This unilluminating definition was refined in a regulation describing these establishments as "[a]ny room in a hotel, restaurant, hall or other place where music and dancing privileges or any entertainment, are afforded the patrons in connection with the serving or selling of food, refreshment or merchandise" (20 NYCRR 527.12 [b] [2] [ii]).

Despite this more specific definition, the Commissioner of Taxation and Finance recognized that uncertainty still continued as to whether activities engaged in by enterprises, not unlike petitioners, were taxable transactions coming within the language of Tax Law § 1105 (f) (3) and endorsed a proposed legislative amendment designed to clarify the definitional shortcoming of the phrase "roof garden, cabaret or other similar place". This amendment, enacted July 24, 1986 and made retroactive to March 1, 1981, excludes from taxation any "place where merely live dramatic or musical arts performances are offered in conjunction with the serving or selling of food, refreshment or merchandise, so long as such serving or selling of food, refreshment or merchandise is merely incidental to such performances" (Tax Law § 1101 [d] [12], as amended by L 1986, ch 609).

■ In a letter to the Governor supporting this retroactive

amendment, the Commissioner adverted to the ambivalence inherent in the "antique statutory language itself imposing the cabaret tax and the limitation of the live performances exception to the admissions tax" (mem of Commissioner of Taxation and Finance, July 15, 1986, Governor's Bill Jacket, L 1986, ch 609). It was further acknowledged that a taxpayer operating a cafe: "might not have realized, either from a reading of the statute or the Department's regulations, that although its admission receipts would have been exempt if it furnished only live dramatic or musical arts performances, it should still have considered whether it qualified as a roof garden, cabaret or other similar place because its receipts at the very same performances came, in a more than incidental way, from food, refreshment and merchandise" *(ibid.)*. This is a clear admission of ambiguity in the scope of the cabaret tax. Furthermore, the very fact of the amendment itself strongly suggests that either the prior definition was equivocal or the reach of the law had been extended. Since there is legitimate doubt as to whether petitioners' activities come within Tax Law § 1105 (f) (3), we are obliged to construe the statute in petitioners' favor *(see, Matter of Bloomingdale Bros. v Chu,* 70 NY2d 218, 223). This lack of certainty as to the applicability to My Father's Place of the cabaret tax, prior to the amendment, precludes respondent from assessing the tax on petitioners' admission charges prior to March 1, 1981.

■ Petitioners also challenge retroactive application of the amended section to their admission receipts for the period from March 1, 1981 to November 30, 1981. A retroactive tax does not violate due process unless its operation is "harsh and oppressive" *(Welch v Henry,* 305 US 134, 147), which has been interpreted to mean that the Legislature has acted arbitrarily and irrationally *(Canisius Coll. v United States,* 799 F2d 18, 25, *cert denied* — US —, 107 S Ct 1887). Retroactive legislation is not necessarily unconstitutional simply because it upsets settled expectations or lays on new liability for a past act *(supra)*. Here, the amendment to the cabaret tax reflects a sound and lawful legislative purpose, that of disambiguating and expanding the tax. It is retroactive presumably because the Legislature assumed enterprises like My Father's Place were already within the scope of the law prior to its amendment. Inasmuch as petitioners have failed to show that the Legislature acted arbitrarily, respondent is entitled to assess the sales and use tax upon petitioners' admission charges collected between March 1, 1981 and November 30, 1981.

56

■ As to the mark-up tests relied upon by respondent to compute sales and use tax due on food and beverage sold, it is worth noting that petitioners did not keep guest checks or records adequate to verify their sales of refreshments, as required by Tax Law § 1135 (a). Thus, Tax Law § 1138 (a) (1) entitled respondent to employ an audit method reasonably calculated to estimate the tax liability *(see, Matter of Guiragossian v Chu,* 130 AD2d 901). Use of mark-up percentages and a base period is not unreasonable, given petitioners' inadequate records; absent a showing by petitioners of convincing evidence that the audit method resorted to and the assessments arrived at were erroneous, respondent's determination is to be upheld *(see, Matter of Sol Wahba, Inc. v New York State Tax Commn.,* 127 AD2d 943, 944). Parenthetically, we note that there is substantial evidence in the record supporting the assumptions made by respondent in its reckoning of petitioners' sales.

MAIN, J. P., CASEY, MIKOLL and HARVEY, JJ., concur.

Determination modified, without costs, by annulling so much thereof as assessed sales and use tax on petitioners' admission charges collected prior to March 1, 1981, and, as so modified, confirmed.