OPINION OF THE COURT
Edward H. Lehner, J.
The question posed by the motion and cross motion for *442 summary judgment is whether the New York City Real Property Transfer Tax (RPTT) is applicable to plaintiffs syndication of limited partnership interests in itself when the plaintiff did not own any realty, but was the sole limited partner in a partnership that did. Under the facts presented herein, the sale by syndication to limited partners of more than a 50% interest in plaintiff constitutes a taxable conveyance under that statute.
FACTS
On September 3, 1986, 595 Madison Avenue Associates Limited Partnership (Associates), a Delaware limited partnership, acquired title to the building at that address. The sole limited partner then and now of Associates is plaintiff, also a Delaware limited partnership. At the time of such acquisition, plaintiff consisted of one general and one limited partner.
In October 1986 plaintiff made a public offering of limited partnership interests, and by November 28 more than 50% of the interests were conveyed to third parties, with 80% of the transferees alleged to be nonresidents of the State of New York.
THE STATUTE
Pursuant to the authority set forth in section 1201 of the Tax Law, in July 1986 the City of New York enacted Local Laws, 1986, No. 23 to extend the RPTT to transfers of controlling economic interests in partnerships which own real property situated in the city. However, the law was declared invalid because the notice of the required public hearing was defective. (See, 41 Kew Gardens Rd. Assocs. v Tyburski, NYLJ, Oct. 3, 1986, at 16, col 2 [Sup Ct, Queens County], affd 124 AD2d 553 [2d Dept 1986], lv denied 68 NY2d 612.) Thereafter, in December 1986, Local Laws, 1986, No. 71 of the City of New York was enacted, which contained language identical to that of Local Law No. 23, and was applicable to conveyances made on or after July 13, 1986, the effective date of the defective statute.
Under the statute (Administrative Code of City of New York § 11-2102 [b] [1]), a transfer tax is imposed "on each instrument or transaction * * * whereby any economic interest in real property is transferred”. "Economic interest in real property” is defined as the "ownership of shares of stock in a corporation which owns real property; the ownership of an *443 interest or interests in a partnership, association or other unincorporated entity which owns real property; and the ownership of a beneficial interest or interests in a trust which owns real property.” (Administrative Code § 11-2101 [6].)
The term "transferred” includes the "transfers or issuance of shares of stock in a corporation, interest or interests in a partnership, association or other unincorporated entity * * * whether made * * * in one or several related transactions, which shares of stock or interest or interests constitute a controlling interest in such corporation, partnership, association, trust or other entity.” (Administrative Code § 11-2101 [7] .) "Controlling interest” in the case of a partnership means "fifty percent or more of the capital, profits or beneficial interest in such partnership”. (Administrative Code § 11-2101 [8] .)
On December 16, 1986 the City Department of Finance published Real Property Transfer Tax Information Bulletin No. 2, which gave numerous hypothetical examples of the application of the RPTT amendments. Two of the examples dealt with two-tier structures of the type presented here, one entity owning another entity which in turn owns real property. The defendants’ position, as demonstrated in that bulletin, is that the sale of a controlling interest in the first entity (which does not own realty) is subject to the RPTT if that entity is a passive holding company whose sole asset is its interest in the other entity which owns New York City real property. There would be no tax, according to the bulletin, if the first entity engaged in any significant business activities other than its ownership of the other entity.
In February 1987, plaintiff paid $1,532,854 under protest in payment of the asserted RPTT liability on such transfers. In April 1987, plaintiff made a claim for the refund of this amount and commenced this action.
THE CONTENTIONS OF THE PARTIES
Plaintiff asserts that: (i) the RPTT has no application to it since it does not own any real property; (ii) the sales of partnership interests do not constitute conveyances of economic interests in real property; (iii) the imposition of the tax violates the State constitutional prohibition against an ad valorem tax on intangible personal property; (iv) the application of the tax to partnership admissions violates the Due Process and Commerce Clauses of the US Constitution; and (v) *444 the retroactive application of the statute violates the Due Process Clauses of the NY and US Constitutions.
The city takes the position that, although the transaction does not fall within the literal wording of the statute in that plaintiff does not hold title to any real property, the court should look behind the transaction and give effect to the economic realities and not permit the use of a dummy or shell entity to avoid payment of the tax.
DISCUSSION
"As a general rule, a statute which levies a tax is to be construed most strongly against the taxing authority and in favor of the taxpayer”. (Matter of SIN, Inc. v Department of Fin., 126 AD2d 339, 343 [1st Dept 1987], affd 71 NY2d 616 [1988].) However, here the issue does not revolve around the meaning of the words, but rather whether in administering the statute the city may successfully attack, as a tax avoidance device, the use of a shell partnership to separate title ownership from the entity in which the economic interests with respect thereto were transferred.
The enabling act for Local Law No. 71 (Tax Law § 1201 [b]) was passed in 1981, with the impetus generally considered to have been the sale of the Pan Am Building in New York City by the transfer of stock, which enabled the seller to avoid the imposition of the RPTT. In approving the bill, Governor Carey wrote (1981 McKinney’s Session Laws of NY, at 2636-2637):
"The State has for some time authorized the imposition of a tax on transfers of real property in New York City. At present, the tax is imposed only with respect to direct conveyances of real property in which the transfer is actually reflected in a deed. It is common practice, however, for property owners to effectively transfer property while avoiding the tax by selling the property in transactions not involving the recording of a deed. Where property is owned by a corporation, for example, the tax may be avoided by selling the corporation’s stock.
"This bill closes that loophole by permitting the taxation of transfers of controlling interests in corporations, partnerships, associations, trusts and other entities which own real property. As a result, transactions which effectively, albeit indirectly, convey property will now be taxed.”
In his sponsoring bill memorandum (1981 NY Legis Ann, at 480) Senator Marchi states that "the bill is designed to give *445 effect to the substance of these transactions, rather than to their mere legal form”, and to close the loophole whereby "real estate can be effectively conveyed tax-free by a sale of the ownership interests in the partnership or other entity.”
Plaintiff argues that because article 31-B of the Tax Law (Tax on Gains Derived from Certain Real Property Transfers) uses language somewhat different from that of Tax Law § 1201 (b), it shows "that the legislature meant to exclude a transaction such as partnership admissions from the reach of the RPTT.”
Clearly the statute would apply to a transfer of a controlling interest in a partnership that owned real property. To accept plaintiff’s argument would ascribe to the Legislature an intent to permit the creation of shell entities to avoid taxation when the whole purpose of the legislation, as stated by the Governor and the Senate sponsor, is to tax transactions which effectively, but indirectly, convey real property.
Tax legislation should be implemented in a manner that gives effect to the economic substance of a transaction. (See, e.g., Matter of Petrolane Northeast Gas Serv. v State Tax Commn., 79 AD2d 1043 [3d Dept 1981], lv denied 53 NY2d 601; Matter of Credit Bur. v State Tax Commn., 105 AD2d 1042, 1043 [3d Dept 1984]; Matter of Chemical Bank v Tully, 94 AD2d 1, 3 [3d Dept 1983].) The RPTT would be rendered a nullity if it could be avoided simply by holding the real property through passive corporations or partnerships.
Courts have frequently invoked the substance-over-form rule to disallow taxpayers’ use of dummy or shell entities which have a tax avoidance effect. For example, in Higgins v Smith (308 US 473 [1940]), a loss deduction was disallowed on the transfer of depreciated property from the taxpayer to a wholly owned corporation. Although corporate formalities were fully observed, the court held that the corporate existence was without economic substance and applied the general rule that a taxing authority may give effect to the economic substance of a transaction regardless of the form chosen by the taxpayer, stating: "On the other hand, the Government may not be required to acquiesce in the taxpayer’s election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the *446 purposes of the tax statute.” (Supra, at 477.) See also, Molina Props. v Commissioner (319 US 436, 439 [1943]) where it was said that "in matters relating to the revenue, the corporate form may be disregarded where it is a sham or unreal.” This approach also has been followed to prohibit the use of illusory partnerships for tax avoidance. (See, e.g., Haggard v Wood, 298 F2d 24, 26 [9th Cir 1961]; Trousdale v Commissioner of Internal Revenue, 219 F2d 563 [9th Cir 1955]; Matter of Liquor Stores Servs. Co. v State Tax Commn., 46 AD2d 701 [3d Dept 1974].)
In Matter of Ausbrooks v Chu (66 NY2d 281 [1985]) a limited partner was denied a nonresident income tax deduction because his interest in a New York limited partnership was found to be passive since its business was in fact conducted by an out-of-State partnership owned by the New York partnership.
Here the sales of plaintiff’s partnership interests were, in essence, the sales of interests in real property situated in New York City, and the economic value of such interests was derived solely from that parcel of realty. The purchasers of limited partnership interests will obtain their profits exclusively from revenues, capital appreciation and tax benefits attributable to that property. This is precisely the sort of transaction the RPTT amendment in question was intended to reach, and these transactions would have come within the literal terms of the amendment but for the existence of plaintiff, a passive holding company which is engaged in no independent business activity. Accordingly, the court will disregard the passive shell entity, and permit the city to treat the transfers of partnership interests in plaintiff as if they were transfers of interests in the owning partnership.
Contrary to plaintiff’s argument, the RPTT amendment at issue does not impose an ad valorem tax on intangible personal property as it possesses none of the characteristics of such a tax. In Franklin Socy. for Bldg. & Sav. v Bennett (282 NY 79 [1939], appeal dismissed 309 US 640) the court discussed the essential characteristics of an ad valorem property tax in relation to article XVI, § 3 of the NY Constitution. That section provides, in pertinent part, that "intangible personal property shall not be taxed ad valorem nor shall any excise tax be levied solely because of the ownership or possession thereof’. The two salient features of the mortgage recording tax at issue there which prevented it from coming within the constitutional prohibition were that it was levied not for mere *447 ownership or possession of a mortgage, but rather for the right to record the mortgage, and because the tax was imposed only once, at the time of recording. Similarly, the RPTT is also not levied for mere ownership or possession nor imposed at any regular interval, but only upon the occurrence of a single event: to wit, a transfer. Therefore taxation of the transfers of the limited partnership interests does not violate the ad valorem constitutional prohibition.
Nor does the RPTT violate either the Commerce or Due Process Clauses of the Federal Constitution. In Complete Auto Tr. v Brady (430 US 274 [1977], reh denied 430 US 976) it was held that a State may properly impose a tax on receipts from interstate commerce "when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State.” (Supra, at 279; see also, Mobil Oil Corp. v Commissioner of Taxes, 445 US 425, 443 [1980]; Matter of Weil v Chu, 120 AD2d 781, 784 [3d Dept 1986], affd 70 NY2d 783 [1987].)
The transaction here is the syndication of New York City real estate. Without question New York City is the predominant place where each buyer of a partnership share in plaintiff "in every practical sense invokes and enjoys the protection of the laws, and in consequence realizes the economic advantages of his ownership.” (First Bank Corp. v Minnesota, 301 US 234, 241 [1937].)
Nor can it be said that the RPTT burdens interstate commerce. On the contrary, the tax is fairly related to the services provided by New York City. The RPTT amendment was intended to tax direct and indirect transfers of New York City real estate on an equal basis, the measure of such tax being the consideration paid.
As to retroactivity, provisions in tax statutes for such an application have been found constitutional. (See, e.g., Welch v Henry, 305 US 134 [1938]; Canisius Coll. v United States, 799 F2d 18, 25-26 [2d Cir 1986], cert denied 481 US 1014 [1987]; Matter of Replan Dev. v Department of Hous. Preservation & Dev., 70 NY2d 451 [1987]; Matter of Neuner v Weyant, 63 AD2d 290 [2d Dept 1978], appeal dismissed 48 NY2d 975.) As stated in Neuner (supra, at 299): "Retroactive tax legislation constitutes 'legislative decision-making in the economic domain’ and '[o]rdinarily, as long as the legislature’s economic policies fall within the scope of its constitutional *448 authority, foster no invidious discrimination, infringe no independent constitutionally protected interest, and reasonably serve legitimate legislative purposes, the substantive requirements of Due Process are satisfied’ ”.
In Replan Dev. (supra, at 455) the Court of Appeals discussed the standards for a retrospective tax statute passing constitutional scrutiny stating:
"Retroactivity provisions in tax statutes, if for a short period, are generally valid * * * and ordinarily are upheld against due process challenges, unless in light of 'the nature of the tax and the circumstances in which it is laid’, the retroactivity of the law is 'so harsh and oppressive as to transgress the constitutional limitation’ * * * Whether the retroactive application of a tax statute is 'harsh and oppressive’ is a 'question of degree’ * * *
"In reaching the appropriate balance, several factors may be considered. First, and perhaps predominant, is the taxpayer’s forewarning of a change in the legislation and the reasonableness of his reliance on the old law * * * This inquiry focuses on whether 'the taxpayer’s "reliance” has been justified under all the circumstances of the case and whether his "expectations as to taxation [have been] unreasonably disappointed” ’ * * * Additionally, the length of the retroactive period often has been a crucial factor, and excessive periods have been held to unconstitutionally deprive taxpayers of a reasonable expectation that they 'will secure repose from the taxation of transactions which have, in all probability, been long forgotten’ * * * Finally, the public purpose for retroactive application is important because of the taxing authority’s legitimate concern that 'evasive measures taken after introduction of a bill but before enactment might frustrate the purpose of the legislation’ ”.
Here, the relevant considerations do not militate in the taxpayer’s favor. The public was on notice at all times during the retroactive period of the city’s intention to impose a tax on transfers of economic interests in real property. It was only the inadvertent failure to give proper notice of the public hearing regarding Local Law No. 23 which occasioned the retroactive period of five months, which is not excessive, falling within the calendar year of the enactment of the legislation.
The public purpose for the amendment (to close what was perceived to be a loophole in the law) is a reasonable basis on *449 which to legislate retroactively. (See, Matter of Epstein v New York State Tax Commn., 132 AD2d 52, 55 [3d Dept 1987].)
Accordingly, plaintiffs motion for summary judgment is denied and defendants’ cross motion for summary judgment is granted.