In the Matter of CHEMICAL BANK, Petitioner, v JAMES H. TULLY, JR., et al., Constituting the Tax Commission of the State of New York, Respondents.

Third Department, June 2, 1983

APPEARANCES OF COUNSEL

*Cravath, Swaine & Moore (Richard J. Hiegel* and *Ann H. Pollock* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Francis V. Dow* and *Jeremiah Jochnowitz* of counsel), for respondents.

OPINION OF THE COURT

MAHONEY, P. J.

Based on a field audit of the books of petitioner, the Sales Tax Bureau of the Department of Taxation and Finance determined that petitioner owed $1,576,580 in sales and use taxes for the period of September 1, 1972 through February 29, 1976. Of that amount, $304,912.31 was attributable to payments petitioner made to food service management companies that operated petitioner's employee cafeterias and dining rooms at diverse locations in New York City. Pursuant to the contract between petitioner and the food management companies, petitioner guaranteed such companies a set percentage of profit, a management fee and reimbursement for operating costs not covered by receipts from sales of food and drink.

In July of 1979, petitioner filed a petition for redetermination of that portion of the gross assessment which was based on the payments to the food service management companies. Following a hearing, respondent commission denied the application and sustained the original notice of determination. This transferred CPLR article 78 proceeding seeking to challenge that determination ensued.

It is petitioner's contention that although its contracts with the food service management companies delegated the responsibility for ordering and paying for food and drink to such companies, it was required by these contracts to reimburse the companies for such purchases and, further, said companies never had the economic risk of an owner, nor did they have dominion and control over the purchased potables. In sum, it is petitioner's position that

the food service management companies were petitioner's agents and that the only sale that occurred was between petitioner and the wholesalers. Despite respondent's argument to the contrary, we are constrained to accept petitioner's contention with respect to its legal relationship with the food service management companies based upon the finding of fact in respondent's decision that "[a]lthough the food service management companies purchased the food and drink * * * such purchases were made on behalf of the petitioner and *owned by the petitioner*" (emphasis added).

Therefore, the narrow issue we must decide is whether the transfers of food and drink by the food service management companies to petitioner are taxable sales within the purview of the sales tax. To refine the issue further is to raise the question of whether a transfer of property between an agent and a principal can be reasonably interpreted and taxed as a sale.

The words "sale, selling or purchase" are statutorily defined as "[a]ny transfer of title or possession or both * * * to use or consume * * * for a consideration * * * including the rendering of any service, taxable under this article, for a consideration or any agreement therefor" (Tax Law, § 1101, subd [b], par [5]). This court has stated that "The language of the statute is very broad and inclusive and clearly expresses an intent to encompass most transactions involving the transfer or use of commodities in the business world" (*Matter of Albany Calcium Light Co. v State Tax Comm.,* 55 AD2d 502, 504, revd on other grounds 44 NY2d 986). Statutory definitions of the word "sale" are not guided by the common understanding of the word, but rather by the taxing policies of the legislative body involved. Accordingly, a transaction which might in common parlance not be regarded as a sale might nonetheless be taxed because the Legislature and the courts feel the transaction was devised so as to avoid the tax or because, for all practical purposes, the transaction is the same as others taxed as sales and it is, therefore, taxed as a matter of economic justice (68 Am Jur 2d, Sales and Use Taxes, § 65, p 96).

Legislative intent that the sale of food and drink is subject to tax is clearly evident from the language of

section 1105 of the Tax Law which states: "[T]here is hereby imposed and there shall be paid a tax * * * upon * * * (d) (i) The receipts * * * from every sale of food and drink * * * when sold in or by restaurants * * * or other establishments in this state, or by caterers * * * (1) in all instances where the sale is for consumption on the premises where sold". In *Stouffer Mgt. Food Serv. v Tully* (98 Misc 2d 1128, affd without opn 69 AD2d 1023, mot for lv to app den 47 NY2d 709), the issue presented was whether a company which operates in-house restaurant facilities for employees, under contracts with various employers, is liable for sales tax under section 1105 (subd [d], par [i]) on reimbursed costs, management fees and subsidy payments. The court, in determining that the transactions were subject to the sales tax, stated that "The amounts received from the corporate clients under the reimbursed costs, subsidy and management fee arrangements are sales of food and drink within the intent and meaning of the statute" (*supra,* at p 1129).

Therefore, we conclude that the factual pattern herein, when juxtaposed to the explicit language of section 1105 (subd [d], par [i]) and interpreted in accordance with the broad and inclusive language of section 1101 (subd [b], par [5]) of the Tax Law, compels the conclusion that the transactions between petitioner and its agents are taxable and that respondent's determination to that effect is supported by substantial evidence.

The determination should be confirmed, and the petition dismissed, without costs.

SWEENEY, KANE, CASEY and WEISS, JJ., concur.

Determination confirmed, and petition dismissed, without costs.