In the Matter of RISTORANTE PUGLIA, LTD., et al., Petitioners, v RODERICK G. W. CHU et al., Constituting the State Tax Commission, Respondents.

Third Department, June 28, 1984

APPEARANCES OF COUNSEL

*Leonard Bailin, P. C.* (*William Seplowitz* of counsel), for petitioners.

*Robert Abrams, Attorney-General* (*Francis V. Dow, William J. Kogan* and *Diane DeFurio Foody* of counsel), for respondents.

OPINION OF THE COURT

MAHONEY, P. J.

Petitioner Ristorante Puglia, Ltd. (Ristorante), was organized in June, 1972 by petitioners Anthony Mancuso and Joseph Garofalo to operate "The Puglia", a family restaurant in the Little Italy section of Manhattan. Petitioners also operated a second restaurant in Brooklyn.

While that restaurant was a separate sales taxpaying entity, Ristorante made most of the food and supply purchases for both restaurants.

Sales and use tax returns were timely filed for all periods between June 1, 1972 and November 30, 1976. Following an audit by the Sales Tax Bureau of the Department of Taxation and Finance (bureau), a canvass of the restaurants' suppliers was made due to a lack of adequate books and records. The schedule of canvassed suppliers showed total purchases of $93,841 in 1973, $158,312 in 1974 and $122,641 in 1975. Taking 1974 as a "base year", the bureau increased the 1973 and 1975 results to $118,841 and $152,641, respectively. The bureau then determined that purchases for 1972 and 1976 would be based on estimates of the other three years and fixed purchases for 1972 at $60,000 and 1976 at $152,641. Applying markup percentages to the purchases as calculated, the following taxable sales were arrived at: $153,300 for 1972, $307,208 for 1973, $399,020 for 1974, $395,232 for 1975 and $395,232 for 1976.

Thereafter, in December, 1977, the bureau issued to petitioners a notice of determination and demand for payment of sales and use taxes in the amount of $79,685, plus interest and penalties, totaling $129,943. A hearing was held in February, 1982. The Tax Commission, in its decision, canceled fraud penalties and the deficiency assessed for 1972, which fell outside the applicable Statute of Limitations. The Tax Commission further determined that a lack of adequate records justified the canvass procedure and the markup percentages; that it was not required to make any allowance for employee meals, waste and spoilage because petitioners did not meet their burden pursuant to subdivision (c) of section 1132 of the Tax Law; that no allowance could be credited for sales reported and tax paid by Puglia by the Sea, the Brooklyn restaurant, because petitioners did not produce any evidence showing what percentage of the purchases made by Ristorante were actually accountable to the second restaurant.

The instant CPLR article 78 proceeding was commenced in June, 1983 and has been transferred to this court for determination.

While we reject petitioners' contention that the bureau was not justified in resorting to estimates in determining taxable sales during the periods at issue, since it is clear that the records provided by petitioner were wholly inadequate to satisfy the requirements of section 1135 of the Tax Law (see *Matter of Grant Co. v Joseph,* 2 NY2d 196, 206, cert den 355 US 869; *Matter of Carmine Rest. v State Tax Comm.,* 99 AD2d 581), we nevertheless conclude that the auditing methodology employed was improper, necessitating annulment of the Tax Commission's determination.

When, as here, records provided by the taxpayer are incomplete and insufficient, it is the bureau's duty to select a method of audit reasonably calculated to reflect the taxes due (see *Matter of Urban Liqs. v State Tax Comm.,* 90 AD2d 576; *Matter of Surface Line Operators Fraternal Organization v Tully,* 85 AD2d 858, 859). Here, in our view, the methodology employed was unreasonable because it was not calculated to accurately reflect the tax due. The bureau's auditor knew that Ristorante purchased food and supplies for the restaurant in Manhattan as well as the restaurant in Brooklyn. Yet, the canvass statement sent to suppliers did not request the suppliers to state whether the sales were for the Manhattan restaurant, the Brooklyn restaurant or for both. Next, suppliers should have been asked what sales were made directly to the taxpaying entity that operated the Brooklyn eatery. More important, to arrive at the best estimates, the bureau should have deducted from the sales made by Ristorante the taxable sales reported by the second restaurant. Since the record contains clear and convincing evidence that the canvass results reflected purchases by Ristorante for two restaurants, the determination of taxable sales by applying markup percentages to the canvassed purchases necessarily reflects the erroneous calculation of those purchases. Further, Karl Speier, the sole meat supplier to both restaurants, testified that his canvassed statement was for purchases intended for both restaurants. Juxtaposed to the proof supplied by petitioners is the evidence offered by the bureau in support of its calculations. Such evidence consisted solely of statements made by 25 nontestifying suppliers, 6 of which were unsigned and 14 of which were impeached by subsequent affidavits by the same suppliers.

We also conclude that the Tax Commission erroneously made certain additions to the canvassed purchase results. Where, as here, petitioner's records are incomplete, the use of a base year is not, per se, unreasonable (see *Matter of Urban Liqs. v State Tax Comm., supra*). However, the choice of 1974 as the base year was inappropriate. Since 1974 was the only full year during which Ristorante purchased food and supplies for both restaurants, that year necessarily had the highest amount of purchases. Thus, 1973 and 1975 had smaller amounts of purchases. The addition of $25,000 to 1973 purchases and $30,000 to 1975 purchases merely because the base year selected by the bureau was the highest of the audited years is, without more explanation than the auditor's "hunch", arbitrary and capricious.

In sum, while we find resort to estimates because of the inadequacy of petitioners' records to have been proper, as well as the refusal to make allowances for employee meals, spoilage and waste, we nevertheless conclude that the auditing methodology employed was not reasonably calculated to reflect the taxes due, and, further that the additions made to the 1973 and 1975 purchases were arbitrary and capricious. Accordingly, we are constrained to find that petitioners sustained their burden of demonstrating by clear and convincing evidence that the amount of tax assessed was erroneous (*Matter of Surface Line Operators Fraternal Organization v Tully, supra*).

The determination should be annulled, with costs, and the matter remitted to the State Tax Commission for further proceedings not inconsistent herewith.

MAIN, WEISS, LEVINE and HARVEY, JJ., concur.

Determination annulled, with costs, and matter remitted to the State Tax Commission for further proceedings not inconsistent herewith.