■ In the Matter of MATTHEW IANNIELLO et al., Petitioners, v NEW YORK TAX APPEALS TRIBUNAL et al., Respondents. [617 NYS2d 973] —White, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained a sales and use tax assessment imposed under Tax Law articles 28 and 29.

In September 1978, Paul Gelb, as president of P&G Funding Corporation (hereinafter P&G) leased property on Broadway in Manhattan. Thereafter P&G, doing business as Mardi Gras Bar, was licensed by the State Liquor Authority to operate a bar on said premises. The bar commenced operation in January 1979 and about that time petitioners acquired an interest in the profits of said bar, although they were not shareholders, officers or directors of P&G.

As a result of FBI surveillance of petitioners' business on 50th Street in Manhattan between September and December 1982, petitioners, Gelb and others, were indicted on a variety of Federal charges, including a scheme to evade a large portion of sales tax on the gross sales of P&G. After a jury trial, petitioners and Gelb were found guilty of, *inter alia,* a conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act *(see,* 18 USC § 1961 *et seq.),* mail fraud regarding filing of State sales tax returns and tax evasion. These convictions were upheld by the Second Circuit Court of Appeals *(see, United States v Ianniello,* 808 F2d 184, *cert denied* 483 US 1006). In its decision, the Second Circuit noted that Gelb had acted as a front for petitioners who actually, but secretly, directed and supervised the affairs of an enterprise which included the Mardi Gras as well as other bars and restaurants in Manhattan. The court further found that P&G, through its operation of the Mardi Gras, was the most profitable business of said enterprise and that from 1979 through 1982 petitioners and Gelb regularly "skimmed" its cash receipts, dividing over $2 million in unreported income equally among themselves.

Shortly thereafter, the State Department of Taxation and

Finance (hereinafter Department) conducted a sales tax audit of P&G and, as a result, determined that from December 1, 1978 until February 4, 1986, the date the business was sold, there was an additional sales tax due in the amount of $292,902.50, and that by virtue of their actual ownership and control of P&G, petitioners were effectively officers of the corporation and responsible for said sales tax. Petitioners challenged the notice of determination, but waived a hearing and agreed to have the matter submitted to an Administrative Law Judge (hereinafter ALJ), who sustained the notices of determination and demands for payment of sales tax. Respondent Tax Appeals Tribunal affirmed the ALJ's determination and this appeal ensued.

Petitioners' main contention is that they were not persons required to collect sales tax pursuant to Tax Law § 1131 (1) since they were not officers, directors or employees of P&G and not under a duty to act for said corporation. We reject petitioners' narrow interpretation of the statute and agree with the ALJ, who found that petitioners possessed all the indicia of control that would impose liability upon an officer, director or employee of a corporation, and we also note that Tax Law § 1131 (1) includes, in a broad definition of persons required to collect sales tax, "every vendor of tangible personal property or services". As we stated in *Matter of Sunny Vending Co. v State Tax Commn.* (101 AD2d 666, 667, quoting *Matter of Chemical Bank v Tully,* 94 AD2d 1, 3, quoting *Matter of Albany Calcium Light Co. v State Tax Commn.,* 55 AD2d 502, 504, *revd* 44 NY2d 986), the construction by the Tax Commission is consistent with "this court's recognition that the broad and inclusive language of the taxing statute ' "clearly expresses an intent to encompass most transactions involving the transfer or use of commodities in the business world" ' ". The economic reality of a transaction should be considered regardless of the form of the transaction where it is necessary to avoid creation of a loophole in the Tax Law *(see, Matter of Schrier v Tax Appeals Tribunal,* 194 AD2d 273, *lv dismissed* 83 NY2d 944). Where, as here, examination of the record reveals overwhelming evidence supporting the Tax Tribunal's finding that petitioners were involved in the corporation and obtained substantial income from said corporation as silent partners, the Tax Tribunal's determination was reasonable and should be upheld *(see, Matter of Kim Poy Lee v Tax Appeals Tribunal,* 202 AD2d 924).

Petitioners also contend that the audit conducted by the Department was not reasonably calculated to reflect the taxes

due. Here, however, the records provided by petitioners were patently false and thus inadequate to enable the auditor to conduct the necessary audit. Given these circumstances the Department could select a method of audit reasonably calculated to reflect the taxes due *(see, Matter of Shukry v Tax Appeals Tribunal,* 184 AD2d 874; *see also, Matter of A & J Gifts Shop—Vanni v Chu,* 145 AD2d 877, *lv denied* 74 NY2d 603; *Matter of Ace Provision & Luncheonette Supply v Chu,* 135 AD2d 1070). Therefore, we confirm the Tax Tribunal's determination since it has a rational basis and is supported by substantial evidence *(see, Matter of Buzzard v Tax Appeals Tribunal,* 205 AD2d 852; *Matter of Cohen v State Tax Commn.,* 128 AD2d 1022).

Mercure, J. P., Crew III and Casey, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.