In the Matter of NORTH SHORE CADILLAC-OLDSMOBILE, INC., Petitioner, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents. [787 NYS2d 463]—

Mugglin, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2106) to review a determination of respondent Tax Appeals Tribunal which sustained a sales and use tax assessment imposed under Tax Law articles 28 and 29.

By mid-1998, Ronald Cadillac-Oldsmobile, Inc. had two serious financial problems. First, it had filed sales and use tax returns with the state for the periods from December 1, 1995 through November 30, 1997 but had only paid minimal amounts of the taxes due. As a result, the Department of Taxation and Finance, Division of Taxation (hereinafter Division), between November 1, 1996 and November 16, 1998, issued five warrants exceeding, in toto, $1 million. Second, Ronald Cadillac had defaulted on its note to Bank of Smithtown, a secured creditor owed more than $420,000. The bank elected to enforce its rights pursuant to the security agreement and issued a notice of public sale of Ronald Cadillac's collateral to be held July 17, 1998. Counsel for Ronald Cadillac persuaded the bank officials that a private sale would yield a greater return than would a public auction and the bank adjourned the auction and entered into a forbearance agreement, pending execution of a contract of sale in an amount sufficient to pay the bank in full. Ronald Cadillac signed an asset purchase agreement on August 17, 1998 for $500,000 with two individuals who subsequently assigned the contract to petitioner. Notably, the contract required that the Division be given the applicable bulk sales notice and petitioner complied with this requirement. Despite being notified that Ronald Cadillac might have unpaid sales tax liability, petitioner closed pursuant to the contract (as amended) and the bank was fully paid. As no part of the sales tax debt was paid, the Division issued a notice of determination and demand for payment of sales and use taxes due in the amount of $500,000. Petitioner protested the notice of determination and demanded that a hearing be held. Before the Administrative Law Judge, peti-

tioner argued that the transaction was not a bulk sale within the meaning of Tax Law § 1141 (c) because it was exempt therefrom as a sale in settlement or realization of a valid lien, mortgage or other security interest pursuant to 20 NYCRR 537.1 (a) (4) (i). In addition to rejecting this argument, the Administrative Law Judge found the Division's lien took priority over the bank's perfected security interest. Following affirmance by respondent Tax Appeals Tribunal, petitioner instituted this CPLR article 78 proceeding wherein he challenges the Tribunal's determination as not supported by substantial evidence and arbitrary and capricious. In addition, petitioner asserts that Tax Law § 1141 (c) is unconstitutional as applied to it. We disagree and affirm.

Tax Law § 1141 (c) applies "[w]henever a person required to collect tax shall make a sale, transfer, or assignment in bulk of any part or the whole of its business assets, otherwise than in the ordinary course of business." If this occurs, the statute gives the Division a first priority and right on the consideration paid in the sale for any sales taxes that are determined to be due from the seller. The statute further requires the purchaser to give notice to the Division of the sale date and if the Division notifies the purchaser that it has a possible claim for unpaid sales taxes, the purchaser is required to withhold the consideration due the seller up to the amount of the sales tax claim. Upon failing to do so, the statute makes the purchaser personally liable for the seller's unpaid sales taxes in an amount up to the purchase price or fair market value of the business assets sold, whichever is greater. Exempted from the definition of a bulk sale, however, are "sales, transfers or assignments of business assets in settlement or realization of a valid lien, mortgage or other security interest" (20 NYCRR 537.1 [a] [4] [i]).

Petitioner argues that since this sale was to satisfy the valid lien of the bank, this exception applies and the sale was not a bulk sale. We cannot agree. Assuredly, the bank was interested in the event, but it did not directly take control of the assets or sell them at auction pursuant to its notice. Instead, there was a direct sale from Ronald Cadillac to petitioner of all of Ronald Cadillac's assets. Having chosen the form of the business transaction, petitioner must live with the tax consequences (*see Matter of Lion Brewery of N.Y. City v Tax Appeals Trib. of State of N.Y.*, 217 AD2d 811, 813 [1995]; *Matter of Sverdlow v Bates*, 283 App Div 487, 490 [1954]). The exception relied on by petitioner applies only when the transfer is made directly to the holder of the security interest in satisfaction of the debt or to a designee of the holder of the security interest who assumes liability for

the outstanding debt (*see Harcel Liqs. v Evsam Parking*, 48 NY2d 503, 503 [1979]; *American Metal Finishers v Palleschi*, 55 AD2d 499, 501 [1977]). As the bank did not solicit, direct or in any way control the sale of the assets to petitioner, the exception to the bulk sale definition found in the regulation has no application. To hold otherwise would impair the Division's right to collect its tax claims by the simple expedient of permitting a taxpayer to transfer his or her assets (*see Spandau v United States of Am.*, 73 NY2d 832, 833 [1988]; *Harcel Liqs. v Evsam Parking, supra* at 507).

We are also unpersuaded by petitioner's reliance on the bulk sales provisions of the Uniform Commercial Code (*see* UCC former art 6). Those provisions were designed to prevent commercial fraud (*see Committee of Unsecured Creditors of Interstate Cigar Co. v Interstate Distrib.*, 184 Misc 2d 774, 778-779 [2000], *affd* 290 AD2d 407 [2002], *lv denied* 99 NY2d 501 [2002]) and did not apply if the transfer was directly to the secured creditor (*see* UCC former 6-103 [3]) as there was no cash with which the seller could abscond (*see American Metal Finishers v Palleschi, supra* at 501). In contrast, here the transfer was not to the secured creditor and the statute under review is designed to assure the collection of tax revenue that was never the property of the seller of the business (*see* Tax Law § 1132 [a] [1]; *Matter of Ames Volkswagen v State Tax Commn.*, 47 NY2d 345, 350 [1979]). It is designed to preserve the state's "indisputable right to collect taxes which could otherwise be extinguished by the simple expedient of a taxpayer transferring its assets" (*Harcel Liqs. v Evsam Parking, supra* at 507). We therefore conclude that the Tribunal's determination that the transaction in question was a bulk sale is supported by substantial evidence and its interpretation of the regulation as requiring an actual foreclosure by the creditor before the exemption is triggered is rational.

Lastly, we find no constitutional infirmity. To the extent that petitioner seeks to invoke any constitutional rights of the bank, it has no standing to do so (*see Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 773 [1991]). While petitioner has standing to claim that its own constitutional rights were violated, we find no merit in such claim. Tax Law § 1141 (c) provides a bulk sales purchaser with ample protection from paying the vendor's unpaid sales taxes. Indeed, the Court of Appeals has recognized the statutory scheme to be fundamentally fair as a way to "ensure that there exists a source of funds from which to satisfy its tax claims . . . [and] the statute provides more than adequate protection to the prospective purchaser" (*Harcel Liqs. v Evsam Parking, supra* at 507). It was only by

ignoring the dictates of the statute that petitioner became personally liable for Ronald Cadillac's unpaid sales taxes.

Peters, J.P., Rose, Lahtinen and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.