■ In the Matter of CS INTEGRATED, LLC, Petitioner, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents. [798 NYS2d 166]—

---

Mugglin, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained a corporation franchise tax assessment imposed under Tax Law article 9A.

Petitioner, a foreign corporation, provides cold storage and related services to the food products industry. In 1989, to service a retail supermarket chain (hereinafter Company A), petitioner built a refrigerated warehouse in the Town of Chester, Orange County. In 1991, Company A experienced cash flow problems and asked petitioner for a loan. Fearful of its status as merely another creditor if Company A filed for bankruptcy, petitioner refused to make the loan. Instead, petitioner and Company A entered into a supplemental agreement, pursuant to which petitioner bought the inventory at the Chester warehouse from Company A at Company A's cost. In addition, the agreement provided that future purchases of inventory by Company A from third parties—up to a capped amount—would be immediately resold to petitioner at cost. Company A would purchase all of its New York region inventory needs exclusively from petitioner even if such products were available at lower prices elsewhere. These repurchases were again made at cost, plus petitioner's service charges pursuant to the original warehousing agreement, plus a "carrying charge" based on the prime rate reflected in the Wall Street Journal. Finally, pursuant to the agreement, petitioner could sell the inventory to third parties although Company A was to have priority as to the availability of such inventory.

Petitioner treated itself as the owner of the inventory for

financial accounting report purposes, for federal income tax purposes and on its New York State tax returns for 1991 and 1992. Thereafter, however, for the tax years at issue (1993 through 1997), petitioner did not include receipts from the sale of inventory in its New York receipts in computing its New York business allocation percentage* nor did it include the inventory purchased from Company A in its New York property for such purposes. Respondent Commissioner of Taxation and Finance denied petitioner's request that its New York business allocation percentage (hereinafter BAP) be adjusted to reflect that neither the inventory nor petitioner's sales receipts therefrom should be included. For the tax years at issue, petitioner declared the carrying charges as income in its calculation of corporate franchise tax payable in this state. Following an audit of petitioner's returns for 1993 through 1997, the Commissioner determined that petitioner should have included the inventory and the inventory sales receipts in its New York property receipts factors in computing its BAP. The Commissioner's recomputation resulted in a notice of deficiency. The parties thereafter stipulated to a corrected total additional tax claimed for the years in issue of $989,695, together with interest and a substantial understatement penalty. Ultimately, on review of the notice of delinquency issued, an Administrative Law Judge canceled the notice of deficiency, concluding that the 1991 agreement between petitioner and Company A was, in fact, an inventory finance agreement and, therefore, petitioner was not required to include the receipts from the sale of inventory in its New York receipts nor include the inventory in its New York property when computing its New York BAP. On administrative appeal, respondent Tax Appeals Tribunal concluded that the agreement was not an inventory financing agreement, but instead a sales agreement under which title to the inventory passed to petitioner, and the Tribunal sustained the notice of deficiency. Petitioner commenced this proceeding in this Court challenging the Tribunal's determination.

We begin by rejecting petitioner's argument that the decision of the Tribunal is a nullity because it lacked jurisdiction to hear the appeal due to a vacancy on the three-member board. Tax

---

* A corporate taxpayer, doing business both inside and outside of New York, is required to pay a corporate franchise tax on the income allocated to New York (see Tax Law § 210 [3]). To determine such income, the taxpayer multiplies its total income by its business allocation percentage, which represents "the proportion of the taxpayer's payroll, property and receipts attributable to New York compared to those of the corporation as a whole" (Matter of Allied-Signal v Tax Appeals Trib., 229 AD2d 759, 761 [1996], appeal dismissed 89 NY2d 859 [1996]). New York payroll is not disputed herein.

Law § 2004 specifically provides that "[a] majority of the Tribunal shall constitute a quorum for the purposes of exercising [its] powers and performing [its] duties, including the issuing of decisions." Also, General Construction Law § 41 provides that whenever three or more public officers are given any power or authority, or charged with any duty to be performed jointly as a board, a majority shall constitute a quorum for the purposes of performing or exercising such power, authority or duty.

Turning to the substantive arguments, we first note that our standard of review is limited. If the Tribunal's determination is "rationally based upon and supported by substantial evidence" (*Matter of Transervice Lease Corp. v Tax Appeals Trib. of State of N.Y.*, 214 AD2d 775, 777 [1995]), it must be confirmed, even if it is reasonably possible to reach a different conclusion (*see Matter of Buzzard v Tax Appeals Trib. of State of N.Y.*, 205 AD2d 852, 853 [1994]), and we may not substitute our judgment for that of the Tribunal (*see Matter of Fuchsberg & Fuchsberg v Commissioner of Taxation & Fin.*, 13 AD3d 831, 834 [2004]). By applying these standards, we are constrained to confirm the Tribunal's determination. We note that despite petitioner's claim that this was merely an inventory financing arrangement, no loan was made, the supplemental agreement was structured specifically so that petitioner would be treated, as it was, in any subsequent bankruptcy filing by Company A as the owner of the inventory and petitioner treated itself as the owner and seller of the inventory for both financial accounting and federal income tax purposes during the years in issue. Petitioner's argument that it had nominal rather than beneficial ownership of the inventory is similarly unpersuasive. Having chosen the form of its business transaction, petitioner is bound by the tax consequences (*see Matter of North Shore Cadillac-Oldsmobile, Inc. v Tax Appeals Trib. of State of N.Y.*, 13 AD3d 994, 996 [2004]). Further, we are unpersuaded by petitioner's interpretation of Tax Law § 210 (3) (a) (2) by which it would define "receipts" as "receipts less cost of goods sold." The statute cannot be so restrictively read. Moreover, reference to federal regulations to define gross income is inapposite because there is no federal tax version of a BAP.

Lastly, we find no basis upon which to annul the penalties imposed upon petitioner. Again, our review of this issue is limited to assuring that the assessment of the penalty determination was supported by substantial evidence and is not arbitrary or capricious (*see Matter of Ross-Viking Mdse. Corp. v Tax Appeals Trib. of State of N.Y.*, 188 AD2d 698, 699 [1992]). Based on this standard of review, we cannot find that there was

substantial authority for petitioner's tax treatment of this issue, or that petitioner adequately disclosed its tax treatment in the return or a statement attached to the return or that there was reasonable cause for the understatement and that petitioner acted in good faith (*see* Tax Law § 1085 [k]).

Crew III, J.P., Peters, Rose and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.