■ In the Matter of RAFAEL RODRIGUEZ, as Officer of Alvin's Wine & Liquor, Inc. Petitioner, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents. [918 NYS2d 625]—

Kavanagh, J.

In 1997, petitioner, who owns and operates Alvin's Wine and Liquor, Inc. in Bronx County, received notification from the Department of Taxation and Finance that it would perform an audit of sales tax returns filed on behalf of the business for the three-year period beginning in December 1994. As part of the audit, petitioner was requested to provide all records regarding purchases and sales made by the business during this three-year period, including financial statements, journals, cash register tapes, ledgers, sales and purchase invoices, as well as copies of sales and federal income tax returns and exemption certificates. Petitioner provided some data, but claimed that he did not have cash register receipts or sales invoices for transactions conducted during this three-year period. Ultimately, the audit was completed and, after the Bronx County District Attorney's office declined to initiate a criminal prosecution, the Department, in August 2006, issued notices of determination that concluded that the business owed $104,785.72 in sales tax, plus interest and a $194,592.58 penalty for filing a fraudulent tax return. A conciliation conference was held and an order was issued reducing the amount owed in taxes to $94,311.35, plus interest and applicable penalties.

After petitioner sought review of this determination by the Division of Tax Appeals, a hearing was held before an Administrative Law Judge who found that the Department had failed to prove by clear and convincing evidence that petitioner deliberately filed fraudulent tax returns on behalf of the business and any assessment sought to be imposed for additional sales tax claimed to be owed for this time period was barred by the three-year statute of limitations (see Tax Law § 1147 [b]). The Division filed an exception to this determination with respondent Tax Appeals Tribunal, which subsequently reversed the Administrative Law Judge's determination, finding that clear and convincing evidence had been produced establishing that petitioner had deliberately understated the amount of the business's sales tax liability and intentionally filed fraudulent

tax returns. Petitioner then commenced this proceeding seeking review of the Tribunal's determination.

The principal issues raised by this proceeding are whether substantial evidence exists to support the determination that clear and convincing evidence has been presented at the hearing that petitioner filed fraudulent tax returns (see Tax Law § 689 [e] [1]; Matter of Revere v Commissioner of Taxation & Fin., 75 AD3d 860, 862 [2010]; Matter of Kucherov v Chu, 147 AD2d 877, 877-878 [1989]; cf. Matter of Clapes v Tax Appeals Trib. of State of N.Y., 34 AD3d 1092, 1093-1094 [2006], appeal dismissed 8 NY3d 975 [2007]), and whether the method used by the Department to perform the audit and calculate the amount of petitioner's tax assessment was reasonable (see Matter of Karay Rest. Corp. v Tax Appeals Trib., 274 AD2d 854, 856 [2000], lv denied 96 NY2d 702 [2001]). Initially, we note that no direct evidence has been presented establishing that petitioner filed these returns with a fraudulent intent. However, circumstantial evidence may be used to prove that a taxpayer has deliberately filed a fraudulent tax return (see Matter of Nelson, 2010 WL 2345601, 2010 NY Tax LEXIS 95 [DTA No. 822547, June 3, 2010]; Matter of Wild Ginger, LLC, 2010 WL 1844804, 2010 NY Tax LEXIS 71 [DTA Nos. 821633 & 821634, Apr. 29, 2010]; see also Korecky v C.I.R., 781 F2d 1566, 1568 [11th Cir 1986] [tax fraud "need not be established by direct evidence, but can be shown by surveying the taxpayer's entire course of conduct and drawing reasonable inferences therefrom"]). With that observation, we begin our analysis of the evidence introduced at the hearing with petitioner's acknowledgment that he failed, as required by the Tax Law, to keep records that would have assisted the Department in arriving at an accurate assessment of the business's tax liability (see Tax Law § 1135 [a] [1]; see also 20 NYCRR 533.2). Not only did petitioner not have cash register receipts for transactions that occurred each day on the premises, but he claimed at the hearing that he routinely tracked the daily sales activities of the business "in [his] head" by simply counting what money remained in the cash register at the end of each business day.

Moreover, petitioner retained an accountant to prepare and file these returns, even though he did not have records that would accurately track the amount of sales made in the business during this period. Petitioner admits learning, albeit belatedly, that many of the entries made in these returns by the accountant were estimates not based on hard data, and acknowledges never filing amended returns designed to address these errors and correct them. Simply stated, petitioner's fail-

ure to produce reliable records regarding sales activities in the business during this period hampered the Department's efforts to determine exactly what petitioner owed in sales tax and, more importantly, rendered it unable to verify petitioner's claim that he acted in good faith when he filed these tax returns. As a result, the Department was compelled to employ an indirect audit methodology to determine the gross income generated by the business and, in particular, the income it derived from the sale of merchandise made during this three-year period. This audit included an analysis of relevant entries made by petitioner in his federal income tax returns as well as an examination of purchase invoices obtained by the Department from wholesalers who sold merchandise to the business during this time period. Using this data, the Department determined that petitioner spent $1,321,000 for merchandise for the business during this three-year audit period, or more than three times what he claimed that the business grossed in sales ($406,018) for the same time period.

No one disputes that serious errors were made in these tax returns and that they did not accurately reflect the business's sales tax liability for this period. Petitioner also does not deny that he derived a significant financial benefit from the errors made in these tax returns, but disavows any responsibility for them. Instead, he places full blame for any errors or mistakes made in these tax returns on the accountant he retained to prepare them. Petitioner explains that he is an "unsophisticated" businessman who routinely left the details surrounding tax matters involving the business to others. However, petitioner has been a sole proprietor who has operated his own business for some time prior to the audit and, before opening this liquor store, owned and operated a small grocery store. This evidence—the failure to provide reliable records, the significant difference that exists between what petitioner spent for merchandise and what he claimed in these tax returns to have sold in the business for the identical time period, the financial benefit he derived from these false returns, and his failure to remedy these errors after he became aware of them—when considered as an integrated whole, provides a substantial basis for the Tribunal's conclusion that petitioner willfully and intentionally filed false sales tax returns for the purpose of deliberately underreporting the sales tax owed by his business for the audit period (*see Matter of AAA Sign Co.*, Tax Appeals Tribunal [DTA No. 800496, June 22, 1989]).

Petitioner also argues that the method used to determine his tax assessment did not take into account certain factors that, if

included in the Department's calculation, would have resulted in a "significant reduction of the estimated total sales and subsequent assessment." These factors include, among others, pilferage and breakage of inventory, lower prices the business was forced to charge for its merchandise because of the neighborhood in which it was located, the "bill and hold" process that petitioner claims he was compelled to use in the daily operation of his business and the Department's refusal as part of the audit to inventory the merchandise that was on the premises. Of course, it was petitioner's inability to produce reliable records that forced the Department to employ this audit methodology, and any complaints he may have had about it have to be viewed in that context (*see* Tax Law § 1135 [a] [1]; 20 NYCRR 533.2; *Matter of Center Moriches Monument Co. v Commissioner of Taxation & Fin.*, 211 AD2d 947, 947 [1995]; *see also Matter of Roebling Liqs. v Commissioner of Taxation & Fin.*, 284 AD2d 669, 671-672 [2001], *appeal dismissed* 97 NY2d 637 [2001], *cert denied* 537 US 816 [2002]; *Matter of Hygrade Casket Corp. v Commissioner of Taxation & Fin.*, 212 AD2d 843, 845 [1995]). Moreover, the burden is on petitioner to establish by clear and convincing evidence that the selected method and the resulting assessment was unreasonable (*see Matter of Karay Rest. Corp. v Tax Appeals Trib.*, 274 AD2d at 856; *Matter of Center Moriches Monument Co. v Commissioner of Taxation & Fin.*, 211 AD2d at 948), and simply because " 'a different audit methodology might provide a more precise estimate of tax liability' " does not mean that the method used was unreasonable (*Matter of MacLeod v Megna*, 75 AD3d 928, 930 [2010], quoting *Matter of Petak v Tax Appeals Trib. of State of N.Y.*, 217 AD2d 807, 809 [1995]).

In that regard, petitioner, in addition to his own testimony, submitted an affidavit from a prior employee of a supplier who stated that petitioner had problems with deliveries made during the audit period. Significantly, petitioner failed to submit any documentary evidence to support his assertions regarding pilferage, breakage, reduced markup and limited sales (*see Matter of Skiadas v State Tax Commn.*, 95 AD2d 971, 972 [1983]). In our view, he has not met his burden to show that the methods used by the Department in its audit and its calculation of the tax assessment were unreasonable (*compare Matter of Grecian Sq. v New York State Tax Commn.*, 119 AD2d 948, 950 [1986]; *Matter of Ristorante Puglia v Chu*, 102 AD2d 348, 350-351 [1984]).

Peters, J.P., Spain, Rose and Egan Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.