■ In the Matter of JAY's DISTRIBUTORS, INC., Petitioner, v JARRY BOONE, as Commissioner of Taxation and Finance, et al., Respondents. [48 NYS3d 551]—

Garry, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining a tobacco tax assessment imposed under Tax Law article 20.

Petitioner, a licensed tobacco wholesaler, is wholly owned by Kaushik Shah, who is also the sole owner of Vikisha, Inc., a tobacco wholesaler licensed in New Jersey. During the time period pertinent here, petitioner and Vikisha stored certain tobacco products in a shared warehouse in New Jersey. Beginning in 2007, the Department of Taxation and Finance conducted an audit of petitioner's tobacco tax liability for the period between March 2004 and December 2006. Upon completion of the audit in 2009, the Department issued a notice of determination by which petitioner was assessed approximately $3 million in taxes, $1.4 million in interest, and $2.2 million as a penalty for fraud. Petitioner submitted a petition for revision or redetermination to the Division of Tax Appeals. Following a hearing, an Administrative Law Judge denied the petition and sustained the determination. Respondent Tax Appeals Tribunal thereafter partially sustained that determination by affirming the assessment of taxes due, but canceled the fraud penalty, finding that the penalty should instead be based upon willful neglect. Petitioner then commenced this CPLR article 78 proceeding in this Court.

Our function in this tax review proceeding is limited; we must confirm the Tribunal's determination if it has a rational basis and is supported by substantial evidence (*see Matter of Hwang v Tax Appeals Trib. of the State of N.Y.*, 105 AD3d 1151, 1152 [2013]; *Matter of CS Integrated, LLC v Tax Appeals Trib. of State of N.Y.*, 19 AD3d 886, 889 [2005]). Entities that are required to collect sales taxes are obligated to keep full records

of their sales and make them available to tax authorities for inspection upon demand (*see* Tax Law § 1135 [a] [1]; [g]; *Matter of Rodriguez v Tax Appeals Trib. of the State of N.Y.*, 82 AD3d 1302, 1304 [2011], *lv denied* 17 NY3d 702 [2011]). When a taxpayer's records are insufficient to permit verification of sales and a complete audit, the Department may estimate the taxes due based upon "external indices" (Tax Law § 1138 [a] [1]). "Where, as here, an indirect audit method has been employed, the taxpayer challenging such an audit has the burden of establishing by clear and convincing evidence that the audit method or tax assessment was erroneous" (*Matter of Wolkowicki v New York State Tax Appeals Trib.*, 136 AD3d 1223, 1228 [2016] [internal quotation marks and citations omitted]). We find that petitioner did not satisfy that burden here, and we reject the contention that the methods used in conducting the audit and calculating the amount of tax due were arbitrary and capricious.

The record reveals that petitioner produced some business records in response to the Department's demand, but that certain purchase invoices were missing and there were gaps in the sales invoice numbers. The Department's auditor determined that the sales invoices that petitioner did produce matched the corresponding tax reports and returns, but that a detailed audit methodology could not be employed because of the missing records. Further, petitioner's tobacco product inventory was intermingled with that of Vikisha in the shared warehouse. Licensees are required by statute to "maintain a secure separate warehousing facility" for tobacco products (Tax Law § 480 [1] [d]). Here, the commingled storage violated that requirement and prevented the Department from separating petitioner's products from Vikisha's for the purpose of tracing them from purchase through importation into New York and eventual sale. The auditor noted that petitioner did not supply inventory records that might have enabled the Department to track the flow of products through the warehouse. Accordingly, the auditor determined that a total accountability audit of purchase and sale transactions by both petitioner and Vikisha was required. Due to the high level of detail that would be necessary to track all of the varieties of tobacco products sold by the two companies during the three-year audit period, the calendar year 2005 was selected as a representative test period.

The Department requested petitioner's computerized sales records for the audit, but petitioner declined to produce them. Shah explained at the subsequent administrative hearing that petitioner's computer system combined records from several

business entities in such a fashion that petitioner's individual records could not be separated. The Department therefore supplemented petitioner's incomplete records by making third-party requests to tobacco suppliers who had made sales to petitioner and Vikisha. The responses revealed that the records received from petitioner and Vikisha were incomplete in many respects; they showed, among other things, that multiple sales had taken place of products for which no purchase invoices had been provided to the Department, and that at least one supplier had made purchases from Vikisha and/or petitioner that were not reflected in the sales information that they had produced. The third-party responses revealed that petitioner and Vikisha had purchased far more tobacco products than they reported having sold. The investigation also revealed several "circular" transactions in which petitioner and/or Vikisha had made sales of tobacco products to other distributors and then had bought them back almost immediately for the same price; the auditor testified that these transactions were highly unusual and could indicate a scheme to avoid payment of tobacco taxes.

In the absence of inventory records, it was impossible to determine what had become of the unaccounted-for products; based upon the auditor's experience with the high perishability and short shelf life of tobacco products, the Department presumed that the missing products had been sold rather than retained in inventory. New Jersey had conducted an audit of petitioner's tobacco product inventory between 2002 and 2006 and had found no additional tax due. Accordingly, the Department concluded that the unaccounted-for product purchases that exceeded the total reported sales in New Jersey and New York had not been sold in New Jersey, but had instead been imported into New York and sold there. Thus, after deducting all transactions upon which taxes had been paid in New York and New Jersey, the Department estimated a total monthly sum based upon the unaccounted-for purchases, extrapolated that amount to the entire audit period, and estimated the resulting tax due.

Shah and petitioner's accountant testified at the administrative hearing, conceding that petitioner's tobacco products were commingled with those of Vikisha in the shared warehouse and that petitioner was unable to provide all of the sales records that the Department requested, but nevertheless asserting that all necessary records to permit a full audit were made available and that no tobacco products were ever sold in New York without payment of proper taxes. However, petitioner's

witnesses were unable to explain the discrepancies discovered by the Department in petitioner's records, nor did they show that the products that had not been accounted for were retained in inventory or otherwise disposed of without selling them in New York. Considering the record evidence as a whole, we find that the methods used to calculate petitioner's tax assessment were "reasonably calculated to reflect the taxes due" (*Matter of Ianniello v New York Tax Appeals Trib.*, 209 AD2d 740, 742 [1994]; *accord Matter of Wolkowicki v New York State Tax Appeals Trib.*, 136 AD3d at 1229-1230), and that petitioner did not "meet its heavy burden" to establish that the methods used were unreasonable or inaccurate (*Matter of Hwang v Tax Appeals Trib. of the State of N.Y.*, 105 AD3d at 1153-1154).* Accordingly, the Tribunal properly upheld the tax assessment.

We reject petitioner's challenge to the penalty imposed pursuant to Tax Law § 481 (1) (a) (i) and (ii). The Tribunal canceled the penalty originally imposed for fraud on the ground that the Department had not established the necessary willful intent (*see* Tax Law § 481 [1] [a] [iv]). The Tribunal further found that where, as here, the Department gives notice in its answer to a taxpayer of its intention to assert a late payment penalty as an alternative to a fraud penalty, the burden shifts to the Department to prove the taxpayer's willful neglect, and that the Department met this burden by demonstrating that petitioner's underpayment had resulted from "a conscious, intentional failure or reckless indifference" (*United States v Boyle*, 469 US 241, 245 [1985]; *see* Tax Law § 481 [1] [a] [i], [ii], [iii]). The Tribunal premised its willful neglect determination on petitioner's failure to maintain a separate and secure warehouse for its tobacco products, despite the statutory requirement that it do so, as well as the multiple deficiencies identified in its books and records, such as its failures to keep separate electronic records for each related entity, to properly document transfers between petitioner and Vikisha, and to maintain all of its purchase invoices. This Court's review of this issue is limited to ensuring that "the penalty determination [is] supported by substantial evidence and is not arbitrary or capricious" (*Matter of CS Integrated, LLC v Tax Appeals Trib. of State of N.Y.*, 19 AD3d at 889). Upon review of the administrative record, we

---

* Petitioner asserts that the Department should be equitably estopped from basing its determination upon petitioner's improper use of the shared warehouse, as the Department allegedly took no action when petitioner reported this shared usage within its 2002 license application. However, this contention was not raised at the administrative level and may not be considered by this Court (*see Matter of Karay Rest. Corp. v Tax Appeals Trib.*, 274 AD2d 854, 856 [2000], *lv denied* 96 NY2d 702 [2001]).

find no basis to annul the Tribunal's determination that a penalty for willful neglect was appropriate.

Petitioner further asserts that the sum of the penalty was not properly recalculated in accord with the statute (*see* Tax Law § 481 [1] [a] [i], [ii]), and that the Department continued to demand payment of the fraud penalty and subsequently demanded an increased sum. Respondent Commissioner of Taxation and Finance concedes that petitioner was mistakenly billed for the fraud penalty, as a result of an administrative error. At oral argument, the Commissioner represented to this Court that the penalty has been recalculated in accord with the statutory directive and that petitioner's counsel has been informally advised of the newly calculated amount. The Commissioner further asserts that collection efforts have been suspended during this proceeding and that, when they resume, petitioner will receive formal notification of the corrected penalty amount. Given these circumstances, we perceive no need to remit for recalculation. Finally, petitioner's contention that it is entitled to counsel fees pursuant to 22 NYCRR 130-1.1 for respondents' alleged bad faith in failing to correct the penalty error earlier is not properly before this Court, as it was raised for the first time in petitioner's reply brief (*see Matter of Rosenfelder [Community First Holdings, Inc.—Commissioner of Labor]*, 137 AD3d 1438, 1440 [2016]).

McCarthy, J.P., Lynch, Rose and Aarons, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.