Matter of Forest City Realty Trust, Inc. v Tax Appeals Trib. of the State of New York (2020 NY Slip Op 06320)





Matter of Forest City Realty Trust, Inc. v Tax Appeals Trib. of the State of New York


2020 NY Slip Op 06320


Decided on November 5, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 5, 2020

528420

[*1]In the Matter of Forest City Realty Trust, Inc., Formerly Known as Forest City Enterprises, Inc., Petitioner,
v
Tax Appeals Tribunal of the State of New York et al., Respondents.

Calendar Date: September 9, 2020

Before: Egan Jr., J.P., Mulvey, Devine, Aarons and Colangelo, JJ.


McConville, Considine, Cooman & Morin, PC, Rochester (Kevin S. Cooman of counsel), for petitioner.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for Commissioner of Taxation and Finance, respondent.



Colangelo, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining a notice of disallowance to certain tax credits against a corporate franchise tax imposed under Tax Law article 9-A.
The Empire Zones Program is an incentive program implemented by the Legislature to encourage economic development in disadvantaged areas of the state (see General Municipal Law art 18-B). Petitioner, a developer and operator of real estate projects throughout this state, claimed a qualified empire zone enterprise (hereinafter QEZE) tax credit for the 2009 tax year in the amount of $327,866 for real property taxes owed by FC Yonkers Associates, LLC, a subsidiary of petitioner that was formed in 2001 for the purpose of owning and developing Ridge Hill, a retail and residential development project located in the City of Yonkers, Westchester County.[FN1] To qualify for the QEZE tax credit, petitioner was required to show that FC Yonkers, among other things, increased its workforce by one employee during the 2009 tax year above the zero employees that it claimed to have had in its test year, a period that precedes its year of QEZE certification (see Tax Law §§ 14 [b] [1]; 15 [b], [d]). Petitioner claimed that Theron Russell, a project manager for the Ridge Hill project, was an employee of FC Yonkers during the 2009 tax year and that petitioner therefore increased the workforce of FC Yonkers from zero, the number of employees that it claimed prior to becoming a QEZE participant, to one.
The Division of Taxation and Finance subsequently issued a notice of disallowance denying petitioner's claim for the QEZE tax credit due to petitioner's failure to supply information requested by the Division. Petitioner contested the denial, and, following a hearing, an Administrative Law Judge granted the petition, finding, among other things, that the evidence showed that Russell was a common-law employee of FC Yonkers for the 2009 tax year and, therefore, that petitioner qualified for the QEZE tax credit. The Division sought administrative review with respondent Tax Appeals Tribunal, which reversed the Administrative Law Judge's decision and upheld the Division's disallowance of the QEZE tax credit. In doing so, the Tribunal determined that petitioner was unable to show that Russell was an employee of FC Yonkers and not an employee of Forest City Ratner Companies, LLC (hereinafter FCRC), which is another subsidiary of petitioner and an overhead management company that provides centralized services and payroll costs for Russell and other personnel working at the Ridge Hill project. Petitioner subsequently commenced this CPLR article 78 proceeding challenging the Tribunal's determination.
Petitioner contends that the Tribunal, in determining that Russell was an employee of FCRC and not FC Yonkers, ignored its own regulation, which establishes "direction and control" as the determinative test for finding a common-law employer-employee relationship, and arbitrarily adopted a "form over substance" test. In so doing, petitioner avers that the Tribunal rendered a determination that is unsupported by substantial evidence and contrary to law. We disagree and confirm.
Petitioner, as a taxpayer seeking a tax credit, "bears the burden of proving an unambiguous entitlement thereto" (Matter of Suozzi v Tax Appeals Trib. of the State of N.Y., 179 AD3d 1253, 1255 [2020] [internal quotation marks and citations omitted]; see Matter of Level 3 Communications, LLC v Erie County, 174 AD3d 1497, 1500 [2019], lv denied 35 NY3d 906 [2020]; Matter of Wilmorite, Inc. v Tax Appeals Trib. of the State of N.Y., 130 AD3d 1388, 1389 [2015]), and the Tribunal's determination with respect to employment status will be confirmed "if it is rationally based upon and supported by substantial evidence" (Matter of Ingle v Tax Appeals Trib. of the Dept. of Taxation & Fin. of the State of N.Y., 110 AD3d 1392, 1393 [2013] [internal quotation marks and citation omitted]; see Matter of Wegmans Food Mkts., Inc. v Tax Appeals Trib. of State of N.Y., 33 NY3d 587, 594 [2019]; Matter of XO Communications Servs., LLC v Tax Appeals Trib. of the State of N.Y., 182 AD3d 717, 718 [2020]). To that end, 20 NYCRR 5-9.3 (b) provides that, "[f]or purposes of calculating the empire zone wage tax credit, the term individuals employed includes any individual for which the relationship of employer and employee exists when the taxpayer has the right to control and direct the individual not only as to the result to be accomplished by the individual [but] also as to the means by which such result is to be accomplished. If the relationship employer and employee exists, the designation or description of the relationship, and the measure, method or designation of the compensation are immaterial." As indicia of an employment relationship, the Tribunal has relied on such factors as "the authority to hire and fire, authority to control and direct the work of the employee, and the payment of wages" (Matter of the Petitions of Knowledge Learning Corp. & Kindercare Learning Ctrs., Inc., 2014 WL 4824177, *14 [NY Tax Appeals Trib. DTA Nos. 823962, 8232963, Sept. 18, 2014]; see Matter of the Petition of Manhattan Fire Extinguisher, Inc., 1997 WL 594457, *11, 1997 NY Tax LEXIS 400, *24 [NY Tax Appeals Trib. DTA No. 813561, Sept. 16, 1997]; Revenue Ruling 87-41, 1987 WL 419174, *4-7 [1987-1 Cum Bull 286]).
The record reflects that Russell was hired by FCRC in 2003 to work for one of petitioner's entities in Philadelphia, Pennsylvania, and, in 2005, FCRC assigned Russell to work exclusively on the Ridge Hill project. Robert Sanna, as an executive vice-president with FCRC, provided a written offer of employment to Russell on FCRC letterhead, which Russell accepted and signed. In that offer Sanna advised Russell that, among other things, his salary and benefits would be paid by FCRC, his performance would be reviewed by FCRC and, in accordance with FCRC policy, his employment would be "at-will" and would continue only as long as mutually agreeable to Russell and to FCRC. While working on the Ridge Hill project, Russell was required to report directly to Sanna. FCRC paid Russell and reported his wages for the period 2004 through 2010, including during the at-issue 2009 tax year. The W-2 form issued to Russell in 2009 listed FCRC as Russell's employer. Russell also reported his expenses to FCRC in the 2009 tax year.[FN2] In contrast, FC Yonkers did not report wages earned by Russell during the 2009 tax year. As to Russell's daily activities and the manner in which he was supervised, the record establishes that Sanna supervised Russell's work on the Ridge Hill project, which entailed frequent email correspondence and Russell reporting to Sanna on a weekly basis. Sanna also specified to Russell what the objectives of the development were in terms of time, scope and budget, and Sanna was authorized to approve all contracts that Russell entered into on behalf of FC Yonkers. Russell was also required to report to Sanna on bid solicitations and recommendations for contracts to be entered into with architects, engineers and contractors. Russell worked four days per week at the Ridge Hill project site and one day on the project from his home with Sanna's permission. Further, to the extent that Sanna had the legal authority to supervise and direct Russell, such authority stemmed from Sanna's status as an officer of FCRC, as set forth in the employment agreement signed by Sanna and Russell. Pursuant to that agreement, Russell remained subject to FCRC's direction and control.
Notwithstanding record evidence that could support a contrary determination (see Matter of Wegmans Food Mkts., Inc. v Tax Appeals Trib. of the State of N.Y. 33 NY3d at 592 n 1; Matter of Campaniello v New York State Div. of Tax Appeals Trib., 161 AD3d 1320, 1324 [2018], lv denied 32 NY3d 913 [2019]), the foregoing evidence indicates that FCRC exercised direction and control over Russel's job duties, including the means by which he carried out his responsibilities relative to the Ridge Hill project (see 20 NYCRR 5-9.3 [b]; Matter of Schwartzman v Tax Appeals Trib. of City of N.Y., 7 AD3d at 450-451; see also Revenue Ruling 87-41, 1987 WL 419174, *4-7 [1987-1 Cum Bull 286]). Accordingly, we find that the Tribunal's determination — that Russell was employed by FCRC and not FC Yonkers and, therefore, that petitioner did not satisfy all of the applicable requirements for the QEZE tax credit — has a rational basis and is supported by substantial evidence (see Matter of XO Communications Servs., LLC v Tax Appeals Trib. of the State of N.Y., 182 AD3d at 718-720). To the extent that petitioner's remaining contentions have not been rendered academic by our decision, they have been considered and found to be without merit.
Egan Jr., J.P., Mulvey, Devine and Aarons, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: FC Yonkers was certified as a QEZE participant in March 2004 and had zero employees at that time.

Footnote 2: The fact that FC Yonkers reimbursed FCRC for Russell's salary and expenses is of no moment since, as the Tribunal correctly stated, "where a tax benefit is concerned, it is the form chosen by the taxpayer that controls," and the taxpayer is bound to the tax consequences that result from his or her choice of business form or structure (see Matter of CS Integrated, LLC v Tax Appeals Trib. of State of N.Y., 19 AD3d 886, 889 [2005]; Matter of Ormsby Haulers v Tully, 72 AD2d 845, 846 [1979]).