[982 NE2d 1248, 959 NYS2d 115]

In the Matter of EchoStar Satellite Corporation, Appellant,
v Tax Appeals Tribunal of the State of New York et al.,
Respondents.

Argued November 14, 2012; decided December 18, 2012

## POINTS OF COUNSEL

*Morrison & Foerster LLP*, New York City (*Paul H. Frankel, Irwin M. Slomka* and *Kara M. Kraman* of counsel), for appellant. I. The imposition of use tax on appellant's purchases of equipment is erroneous as a matter of law. (*Matter of Burger King v State Tax Commn.*, 51 NY2d 614; *Matter of American Molasses Co. v McGoldrick*, 281 NY 269; *Matter of Albany Calcium Light Co. v State Tax Commn.*, 44 NY2d 986; *Matter of Helmsley Enters. v Tax Appeals Trib. of State of N.Y.*, 187 AD2d 64, 81 NY2d 710.) II. The Appellate Division's decision violates the interests of substantial justice. III. The Appellate Division's decision sanctions the violation of the Equal Protection and Due Process Clauses of the U.S. Constitution. (*Nordlinger v Hahn*, 505 US 1.)

*Eric T. Schneiderman, Attorney General*, Albany (*Kathleen M. Arnold, Barbara D. Underwood* and *Andrew D. Bing* of counsel), for respondents. I. The Tax Appeals Tribunal rationally determined that petitioner did not purchase equipment for resale "as such" but as part and parcel of its primary business purpose of providing satellite TV programming services. (*Matter of AGL Welding Supply Co. v Commissioner of Taxation & Fin.*, 238 AD2d 734; *Matter of Savemart, Inc. v State Tax Commn.*, 105 AD2d 1001; *Matter of Albany Calcium Light Co. v State Tax Commn.*, 44 NY2d 986; *Matter of Waste Mgt. of N.Y. v Tax Appeals Trib. of State of N.Y.*, 185 AD2d 479; *Matter of 21 Club,*

*Inc. v Tax Appeals Trib. of State of N.Y.*, 69 AD3d 996; *Matter of U-Need-A-Roll Off Corp. v New York State Tax Commn.*, 67 NY2d 690; *Matter of Ace Provision & Luncheonette Supply v Chu*, 135 AD2d 1070; *Matter of Custom Mgt. Corp. v New York State Tax Commn.*, 148 AD2d 919; *Matter of Atlas Linen Supply Co. v Chu*, 149 AD2d 824; *Matter of Helmsley Enters. v Tax Appeals Trib. of State of N.Y.*, 187 AD2d 64.) II. This Court's decision in *Matter of Burger King v State Tax Commn.* (51 NY2d 614 [1980]) does not govern this case. (*Matter of American Molasses Co. v McGoldrick*, 281 NY 269; *Matter of Colgate-Palmolive-Peet Co. v Joseph*, 308 NY 333; *Matter of Dairylea Coop. v State Tax Commn.*, 41 AD2d 312; *Celestial Food of Massapequa Corp. v New York State Tax Commn.*, 63 NY2d 1020; *Matter of U-Need-A-Roll Off Corp. v New York State Tax Commn.*, 67 NY2d 690; *Servomation Corp. v State Tax Commn.*, 51 NY2d 608; *Matter of Helmsley Enters. v Tax Appeals Trib. of State of N.Y.*, 187 AD2d 64; *Matter of Atlas Linen Supply Co. v Chu*, 149 AD2d 824; *Matter of XO N.Y., Inc. v Commissioner of Taxation & Fin.*, 51 AD3d 1154; *Matter of Saltzman v New York State Tax Commn.*, 101 AD2d 910.) III. Petitioner's constitutional claims are unpreserved. (*Matter of XO N.Y., Inc. v Commissioner of Taxation & Fin.*, 51 AD3d 1154; *Matter of Peckham v Calogero*, 12 NY3d 424; *Matter of Aetna Cas. & Sur. Co. v Tax Appeals Trib. of State of N.Y.*, 214 AD2d 238.)

**OPINION OF THE COURT**

GRAFFEO, J.

On this appeal we are asked to determine whether a satellite television provider's purchases of equipment that is used to deliver programming to its customers were exempt from sales and use taxes under New York's Tax Law.

Petitioner EchoStar Satellite Corp. (EchoStar), a national satellite television provider, better known as "DISH Network," operates a number of orbital satellites that broadcast television signals directly to the homes of millions of its subscribers. In order to deliver the programming, EchoStar supplies a customer with a satellite dish and other equipment, including a "low-noise block feedhorn" (LNBF), a set-top box receiver, a switch and a remote control. The LNBF is a component part, attached to the dish, that receives the satellite signals and converts them to a lower frequency for transmittal to a receiver. The receiver, in turn, translates the data and projects images onto a television screen. The switch allows a subscriber to watch different programs on multiple receivers.

Prior to 2000, EchoStar required a subscriber to purchase the necessary equipment at the commencement of a service contract. In May 2000, it changed this practice and began renting the equipment to subscribers through customer lease agreements. Under this new procedure, EchoStar would take possession of the equipment upon the termination of a customer's programming service and refurbish the equipment for use by another subscriber.[1] Although EchoStar did not issue separate bills for the equipment rentals, its invoices separately listed a $5 monthly "equipment fee" for each receiver. The lease agreement also indicated that the annual cost for an additional receiver was $60, or $5 per month.

Between March 2000 and February 2004, EchoStar did not pay sales or use taxes on its equipment purchases from the manufacturers. Instead, EchoStar collected sales taxes from its customers at the time the equipment was leased to them. The sales taxes collected from the subscribers—totaling approximately $2 million—were remitted to the Department of Taxation and Finance (the Department). Following a lengthy audit in 2005, the Department issued a notice of determination assessing EchoStar an additional $1.8 million in use taxes for the same period on the basis that EchoStar owed taxes at the time it purchased the equipment from manufacturers. When the Department refused to credit the $2 million EchoStar had previously remitted toward the new assessment, EchoStar paid the additional taxes under protest.[2]

After a hearing, the Administrative Law Judge agreed with the Department's analysis and, on appeal, respondent Tax Appeals Tribunal (the Tribunal) upheld the notice of determination. Although EchoStar charged its customers an equipment fee, the Tribunal did not consider this arrangement the equivalent of a "lease" and it viewed the equipment as "purely incidental" to EchoStar's primary business of selling satellite television programming.

The Appellate Division confirmed the Tribunal's determination in a subsequent CPLR article 78 proceeding, similarly holding that "the equipment was provided as a part of petitioner's

---

1. According to EchoStar's senior accounting manager, the company continued to offer the purchase option to its subscribers but approximately 90% of them elected to lease the equipment during the time period relevant to this proceeding.

2. Together with interest, this second payment totaled more than $2.4 million.

services and the additional charge in its monthly bills was merely an 'add-on' for the use of the equipment, not a true rental" (*Matter of EchoStar Satellite Corp. v Tax Appeals Trib. of the State of N.Y.*, 79 AD3d 1307, 1309 [3d Dept 2010] [some internal quotation marks and punctuation omitted]). We granted EchoStar's motion for leave to appeal (17 NY3d 701 [2011]).

Article 28 of the Tax Law sets forth the definitions of a "retail sale" and a "sale" and creates an exemption from sales and use taxes for purchases made for resale. Specifically, Tax Law § 1110 (a) states that "[e]xcept to the extent that property or services have already been or will be subject to the sales tax under this article, there is hereby imposed on every person a use tax for the use within this state . . . of any tangible personal property *purchased at retail*" (emphasis added).[3] A "retail sale" is described as "[a] sale of tangible personal property to any person for any purpose, other than . . . *for resale as such*" (Tax Law § 1101 [b] [4] [i] [A] [emphasis added]).[4] In other words, the statute imposes a use tax on EchoStar's purchases except for property that is bought for "resale as such." The resale exemption is the focus of EchoStar's challenge to the Tribunal's determination.

Although the statute does not define the term "resale," we have deemed its definition to be coextensive with that of "sale" (*see Matter of Albany Calcium Light Co. v State Tax Commn.*, 44 NY2d 986, 987 [1978]). Tax Law § 1101 (b) (5) broadly provides that the term "sale" includes "[a]ny transfer of title or possession or both, . . . rental, lease or license to use or consume . . . in any manner or by any means whatsoever for a consideration, or any agreement therefor." Hence, we have made clear that "a purchaser who acquires an item for the purpose of sale or rental . . . purchases it for resale within the meaning of the statute" (*Matter of Albany Calcium Light Co.*, 44 NY2d at 987).

EchoStar asserts that it obtained the satellite equipment in

---

**3.** The use tax is generally employed "to complement the sales tax by taxing property brought into and used within the State under circumstances that prevent collection of the sales tax" (*Matter of Datascope Corp. v Tax Appeals Trib. of State of N.Y.*, 196 AD2d 35, 39 [3d Dept 1994]). In this case, EchoStar's purchases of the equipment at issue occurred outside the state.

**4.** A "[p]urchase at retail" is similarly defined as "[a] purchase by any person for any purpose other than" for resale as such (Tax Law § 1101 [b] [1]).

order to resell or lease it to its customers, qualifying its equipment purchases for the resale exemption. Consistent with this position, it contends that it properly collected taxes upon the subsequent leases of the equipment to its subscribers. The Department concedes that in those instances when EchoStar's customers exercised the option to purchase the equipment, the transactions were eligible for the resale exclusion. But it maintains that the other arrangement—the furnishing of equipment for a monthly fee—did not qualify as a "lease" and, consequently, was not a resale under the Tax Law. The dispositive issue then is whether EchoStar "leased" the equipment to its customers within the meaning of the statute. We agree with EchoStar that it did and therefore reverse the order of the Appellate Division.

Our analysis begins with *Matter of Galileo Intl. Partnership v Tax Appeals Trib. of Dept. of Taxation & Fin. of State of N.Y.* (31 AD3d 1072 [3d Dept 2006]), which informs the outcome of this appeal. In *Galileo*, the Appellate Division upheld the Department's assessment of sales and use taxes on a company's provision of computer equipment to its service subscribers (*id.* at 1075). The company operated a proprietary computer reservation system through which its clients (mostly travel agencies) could obtain information and make reservations for flights, car rentals, hotels and cruises. Together with the software, the company furnished the subscribing agencies with computer equipment for use in accessing the system. The company retained title to the equipment and, presumably, the right to repossess it upon termination of the service agreement. In confirming the Department's determination that the provision of the equipment constituted a lease arrangement, the Appellate Division emphasized that the subscriber agreements were structured as leases, the contracts referred to the computers as being "leased," the monthly charges were proportional to the volume of the equipment provided, and the travel agents could use the terminals for business purposes other than connection to the company's reservation system (*id.* at 1074-1075). As a result, the tax was properly imposed on the company's leasing of the equipment to its customers rather than at the time it purchased the equipment from manufacturers.

The Department's imposition of a use tax on EchoStar's initial procurement of the satellite equipment in this case is difficult to reconcile with *Galileo*, where it assessed the tax on the subsequent equipment leases. Moreover, nearly all of the factors

considered in *Galileo* to denote a lease are present here.[5] Competent evidence adduced at the administrative hearing indicates that EchoStar's customer agreements were structured as leases, distinguishing the service component from the provision of equipment; the equipment rental fees were directly proportional to the number of receivers provided; and the equipment charges were separately delineated on monthly invoices. The record demonstrates that EchoStar plainly satisfied its burden of proving that, as in *Galileo*, "the transfer of equipment was a lease and that such was a significant part of the transaction, not merely a trivial element of a contract for services" (*id.* at 1075). Hence, we conclude that EchoStar purchased the equipment for "resale" consistent with the definition of the tax exemption afforded by Tax Law § 1101 (b) (4) (i) (A).

Contrary to the Department's position, we see no distinction, for the purpose of the resale exclusion, between the outright purchase of equipment and its temporary transfer for valuable consideration. Both types of transactions fit comfortably within the statutory definition of "sale" as they involve either the transfer of title or possession (*see* Tax Law § 1101 [b] [5]). Furthermore, EchoStar's provision of satellite equipment is far from "incidental." Unlike the petitioner in *Matter of Albany Calcium Light Co.* (44 NY2d at 988), whose rental charges were conditioned on the customers' failure to timely return its property, EchoStar's equipment charges were consistently part of its business model, either in the context of purchases or incorporated within its lease agreements.

Finally, it cannot be overlooked that the result sought by the Department—the State's retention of the $2 million in sales tax that EchoStar collected from its customers when it leased the equipment in addition to the levy of $1.8 million in use taxes on EchoStar's equipment purchases from the manufacturers— would amount to an unwarranted windfall to the State (*see Matter of Burger King v State Tax Commn.*, 51 NY2d 614, 623 [1980] [the general purpose underlying our sales tax law "is to impose the tax only upon the sale to the ultimate consumer, at which time the price paid for the taxable item would presumably be at its highest"]; *Matter of Pantelopoulos v Commissioner*

---

5. The Department attempts to distinguish *Galileo* on the basis that EchoStar's customers could not use the satellite equipment for any other purpose. However, we do not consider this distinction to be dispositive.

*of Taxation & Fin.*, 213 AD2d 768, 769 [3d Dept 1995]). As such, the determination of the Tax Appeals Tribunal must be annulled and EchoStar is entitled to a refund of the $1.8 million payment plus interest.

Accordingly, the judgment should be reversed, with costs, respondent Tax Appeals Tribunal's determination annulled and the matter remitted to the Appellate Division, Third Department, with directions to remand to respondent Tax Appeals Tribunal for further proceedings in accordance with this opinion.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH and PIGOTT concur.

Judgment reversed, with costs, determination of respondent Tax Appeals Tribunal annulled, and matter remitted to the Appellate Division, Third Department, with directions to remand to respondent Tax Appeals Tribunal for further proceedings in accordance with the opinion herein.