Matter of CLM Assoc., LLC v New York State Tax Appeals Trib. (2020 NY Slip Op 01531)





Matter of CLM Assoc., LLC v New York State Tax Appeals Trib.


2020 NY Slip Op 01531


Decided on March 5, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 5, 2020

526656

[*1]In the Matter of CLM Associates, LLC, Petitioner,
v
New York State Tax Appeals Tribunal et al., Respondents.

Calendar Date: January 14, 2020

Before: Clark, J.P., Devine, Aarons, Pritzker and Reynolds Fitzgerald, JJ. 


Arent Fox, New York City (Michael P. McMahan of counsel), for petitioner.
Letitia James, Attorney General, Albany (Brian D. Ginsberg of counsel), for Commissioner of Taxation and Finance, respondent.



Clark, J.P.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining a sales and use tax assessment imposed under Tax Law articles 28 and 29.
The Premier Collection, LLC is an automobile sales and service group that wholly owns a number of luxury car dealerships, each of which is organized as a limited liability company. Petitioner is a wholly-owned subsidiary of Premier and, during the period in question, acted as the administrative arm of the group, providing centralized services to the dealerships, such as accounting, human resources, record retention, information technology and marketing. Although petitioner was once a licensed dealer, it relinquished its dealer license in, or prior to, 2003.
Premier's dealerships maintain fleets of loaner cars, stocked with a rotating supply of vehicles taken from new car inventory and set aside for customers to use while their cars are being serviced. Loaner cars are required to be "hard-plated," meaning that they must be titled and have a permanent, nondealer license plate (see Vehicle and Traffic Law §§ 2102 [a] [2]; 2104 [a]). From September 1, 2004 through August 31, 2010 (the audit period), eight of Premier's dealerships had title issued to petitioner for all new cars designated for loaner use.[FN1] The individual dealerships retained physical possession of the loaner cars and the corresponding title documents and, generally, before a loaner car exceeded certain time or mileage restrictions, the car was taken out of loaner service and placed into the dealer's used car inventory for resale. At that time, an employee at the dealership would sign title over to the dealership on behalf of petitioner.
In June 2013, following completion of an audit and a conciliation conference, the Department of Taxation and Finance issued a notice of determination assessing petitioner $1,137,835.16 in sales tax liability, plus interest, on the basis that the transfers of the loaner cars from the dealerships to petitioner constituted taxable retail sales of tangible personal property without any exemption. In reaching the total amount of sales tax owed, the Department gave petitioner trade-in credit for vehicles that were rotated out of loaner status and replaced with new loaner cars on the same day. Petitioner filed a petition for redetermination with the Division of Tax Appeals. Following a hearing, an Administrative Law Judge sustained the sales tax assessment in principal part, but reduced petitioner's total amount of sales tax liability by $70,774 to account for sales tax that had been paid when vehicles exceeded the time and/or mileage restrictions and became long-term loaner cars.[FN2] Petitioner filed an exception, and, following oral argument, respondent Tax Appeals Tribunal further reduced petitioner's sales tax liability to provide credit for $186,288.73 in use tax payments made by the dealerships, but otherwise upheld the Administrative Law Judge's determination. Petitioner thereafter commenced this CPLR article 78 proceeding to challenge the Tribunal's determination.
With certain limited exceptions not applicable here, Tax Law § 1105 (a) imposes sales tax upon "[t]he receipts from every retail sale of tangible personal property." A "retail sale" is defined, in pertinent part, as "[a] sale of tangible personal property to any person for any purpose, other than . . . for resale as such" (Tax Law § 1101 [b] [4] [i] [A]; see 20 NYCRR 526.6 [a], [c] [1]). Additionally, as relevant here, a "sale" is defined as "[a]ny transfer of title or possession or both,
. . . conditional or otherwise, in any manner or by any means whatsoever for a consideration" (Tax Law § 1101 [b] [5]; see 20 NYCRR 526.7 [a]). Under the Tax Law regulations, "[m]onetary consideration includes assumption of liabilities, fees, rentals, royalties or any other charge that a purchaser, lessee or licensee is required to pay" (20 NYCRR 526.7 [b]).
Pursuant to Tax Law § 1132 (c) (1), petitioner was subject to the statutory presumption that the transactions by which it acquired title to the loaner cars were taxable and, therefore, it had the burden of proving the contrary by clear and convincing evidence (see Matter of Mayo v New York State Div. of Tax Appeals, Tax Appeals Trib., 172 AD3d 1554, 1554-1555 [2019], lv denied ___ NY3d ___ [Feb. 13, 2020]; Matter of Shuai Yin v State of N.Y. Dept. of Taxation & Fin., 151 AD3d 1497, 1501 [2017]; Matter of MacLeod v Megna, 75 AD3d 928, 929 [2010]). Petitioner argued that there was a failure of consideration and, thus, no taxable retail sales because the titling of the loaner vehicles to it was merely nominal and had no economic effect given that it and the dealerships were wholly owned by Premier.[FN3] The Tribunal rejected this argument, finding that petitioner's assumption of liability for personal injury claims resulting from negligence in the use or operation of a loaner vehicle (see Vehicle and Traffic Law §§ 128, 388), together with the administrative benefits flowing to the dealerships from petitioner's "centralized loaner management" services, "constituted the consideration required to qualify the transfer of the loaner titles to petitioner as [taxable] retail sales." If this determination is rationally based and supported by substantial evidence, we must confirm it, even if a different conclusion would have been reasonable (see Matter of Toronto Dominion Holdings [U.S.A.], Inc. v Tax Appeals Trib. of the State of N.Y., 162 AD3d 1255, 1257 [2018], lv denied 32 NY3d 907 [2018]; Matter of CS Integrated, LLC v Tax Appeals Trib. of State of N.Y., 19 AD3d 886, 889 [2005]).
At the hearing, Sean Coughlin, Premier's president and chief operating officer, and Dale Leake, petitioner's chief financial officer, generally testified as to the administrative convenience of tasking petitioner with management of the dealerships' loaner fleets. Additionally, it is undisputed that, prior to acquiring title, petitioner did not bear any potential liability for civil damages resulting from accidents involving the loaner cars, but that, upon receiving title, it assumed joint and several liability with each dealership — which retained physical possession of the cars — for any such damages (see Vehicle and Traffic Law §§ 128, 388). Coughlin testified that the impetus behind titling the loaner cars to petitioner was to enable Premier to spread liability among its dealerships, so that a particularly high damages award would not burden or bankrupt any single dealership. Although testimony from Coughlin and Leake suggested that Premier may have been able to spread liability among its dealerships even without titling the loaner cars to petitioner, petitioner's evidence was conflicting on this point. Furthermore, Coughlin testified that titling the loaner cars to petitioner provided additional protection to the dealerships by keeping any single dealership's "name out of the paper" in the event of a bad accident involving a loaner car. Considering all of the foregoing evidence, we are constrained to conclude that the Tribunal rationally determined that petitioner's assumption of liability, as well as the administrative benefits of centralized loaner management, constituted the consideration required for a taxable retail sale and that such determination is supported by substantial evidence, despite evidence in the record that could support a contrary result (see Tax Law § 1101 [b] [5]; 20 NYCRR 526.7 [a], [b]; Matter of Hygrade Casket Corp. v Commissioner of Taxation & Fin., 212 AD2d 843, 844-845 [1995]; Matter of Sunny Vending Co. v State Tax Commn., 101 AD2d 666, 666-667 [1984]).
Although we find that there is substantial evidence in the record to support the Tribunal's determination that the titling of the loaner cars to petitioner constituted taxable retail sales, we are troubled that such a technical application of the Tax Law does not comport with "the spirit underlying our sales tax law, which is to impose the tax only upon the sale to the ultimate consumer" (Matter of Burger King v State Tax Commn., 51 NY2d 614, 623 [1980]). In our view, the Tribunal's determination may result in an unwarranted windfall to the state, which will ultimately receive sales tax from petitioner — which in most cases held title to the vehicles for only 6 to 12 months — and from the ultimate consumers who purchased the vehicles when they were rotated out of loaner status and placed in the dealerships' used car inventories. The Court of Appeals has suggested in dicta that, in determining whether a taxable retail sale occurred, it may be appropriate to consider whether an unwarranted windfall will be bestowed upon the state (Matter of EchoStar Satellite Corp. v Tax Appeals Trib. of the State of N.Y., 20 NY3d 286, 292-293 [2012]). However, the Court of Appeals did not indicate that the Tribunal's determination can be annulled on that basis alone (id. at 292-293), and it is not for this Court to hold that it can be. Accordingly, given our limited scope of review, we must uphold the Tribunal's determination that the transactions were taxable retail sales.
Petitioner alternatively challenges the amount of trade-in credit that it received for vehicles that were rotated out of loaner status and replaced with new loaner cars, arguing that the trade-in credit should not have been limited to "swaps" that occurred on the same day. In so challenging the audit, petitioner bore the burden of establishing by clear and convincing evidence that the audit method and the resulting tax assessment were unreasonable (see Matter of Mayo v New York State Div. of Tax Appeals, Tax Appeals Trib., 172 AD3d at 1554-1555; Matter of Rodriguez v Tax Appeals Trib. of the State of N.Y., 82 AD3d 1302, 1306 [2011], lv denied 17 NY3d 702 [2011]). The Tribunal found that petitioner did not meet its burden here and, so "long as that 'determination is rationally based and is supported by substantial evidence, it must be confirmed, even if a different conclusion would not have been unreasonable'" (Matter of Mayo v New York State Div. of Tax Appeals, Tax Appeals Trib., 172 AD3d at 1555, quoting Matter of Toronto Dominion Holdings [U.S.A.], Inc. v Tax Appeals Trib. of the State of N.Y., 162 AD3d at 1257).
In our view, because sales tax is imposed upon "[t]he receipts from every retail sale of tangible personal property" (Tax Law § 1105 [a] [emphasis added]) and because "sales tax [is] due in full at the time of the taxable transaction" (Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d 249, 258 [2004]; see 20 NYCRR 525.2 [a] [2]; Matter of Prima Asphalt Concrete, Inc. v New York State Tax Appeals Trib., 162 AD3d 1281, 1282-1283 [2018], lv denied 32 NY3d 914 [2019]), the Tribunal reasonably limited trade-in credit to those transactions that petitioner could show through contemporaneous documentation — whether on the invoice, bill of sale or other records demonstrating identifiable, traceable trade-ins [FN4] — to "be a trade of one specific loaner for another." The Tribunal found that, "[i]n the absence of documentation of identifiable, traceable trade-ins," petitioner failed to demonstrate its entitlement to trade-in credit for swaps that occurred on different days. We cannot say that such determination is irrational or unsupported by substantial evidence. Accordingly, we must uphold the Tribunal's method of determining the amount of trade-in credit provided to petitioner and the resulting tax assessment (see Matter of Prima Asphalt Concrete, Inc. v New York State Tax Appeals Trib., 162 AD3d at 1283).
Devine, Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: These transactions were memorialized on petitioner's and the dealerships' respective inventory lists and ledgers, on bills of sale issued by the dealerships and on retail certificates of sale jointly completed by petitioner and the relevant dealership.

Footnote 2: During the audit period, 31 vehicles became long-term loaners, and the dealerships paid sales tax on those vehicles.

Footnote 3: Petitioner also now argues that the transactions did not constitute taxable retail sales because the loaner cars were always intended and available "for resale" (Tax Law § 1101 [b] [4] [i] [A]; see 20 NYCRR 526.6 [a], [c] [1]). However, as this argument was raised for the first time in this proceeding, it is not preserved for our review (see Matter of 21 Club, Inc. v Tax Appeals Trib. of State of N.Y., 69 AD3d 996, 998 [2010]).

Footnote 4: The record demonstrates that, in addition to trade-ins listed on the invoices or bills of sale, petitioner received trade-in credit where there was a corresponding sticky note or email indicating that a trade-in was occurring at the time of the transaction.